## H. L. WILSON v. STATE.

No. 5636.    Opinion Filed Feb. 5, 1927.
(252 Pac. 1106.)

S. M. Smith and C. B. Leedy, for plaintiff in error.

George F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the state.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Woodward county upon a charge of abortion and sentenced to serve a term of 30 days in the county jail.

From the record we gather that in the month of June, 1924, Thelma May Carter, an unmarried woman, was pregnant; that Ted Luthi was the father of the unborn child. She resided in Colorado and came to Oklahoma in June, 1924, in search of Luthi, and was met by two of his brothers, who sought to have an abortion performed in order to protect Ted Luthi. After an unsuccessful effort with another physician they approached defendant, a practicing physician at the town of Woodward; had a conversation with him about the girl's condition and the charge against their brother. Defendant told them to bring the young woman to his office; that he would keep her an indefinite time and would charge them $100. They took her to his office on June 15 and paid him $100. He took charge of her and placed her with one Mrs. Halleen directing that she be brought to his office that evening. She was brought there about 7 or 7:30 p. m. by Mrs. Halleen, who prepared and placed her on the operating table. Defendant put on rubber gloves, made an examination, and according to the evidence of the state performed some act to bring about an abortion. The young woman then went to the home of Mrs.

Halleen where she was to stay. On the following day defendant received information from the Luthis that officers of Ellis county were after them and a young woman and that they were arrested for kidnapping. Defendant received this communication about 2:30 or 3 p. m., and went at once to Mrs. Halleen, and took the Carter woman to Ellis county, but could not locate the Luthis, and returned to Woodward about 12:30 on the morning of June 17. John Luthi was there waiting for him, and defendant then returned to him $71 of the $100 paid, stating that he had done nothing to the girl. The young woman remained at the home of defendant until about 3 p. m., during which time she and the Luthis and defendant concocted a story to tell the officers of Ellis county. Later in the day one of the Luthis took her to Shattuck, and after some roundabout trips she met the county attorney at Gage and from there went to Arnett, the county seat. There she became ill and delivered the fetus.

Defendant denies that he performed any operation and claims that he made an examination only. He is corroborated by Mrs. Halleen.

Contentions of error are argued as follows: First, that the female in an abortion is an accomplice and there is not sufficient corroboration of her testimony; second, erroneous instructions of the court; third, misconduct of the jury; fourth, newly discovered evidence.

Under the first assignment it is argued that, since the witnesses James and John Luthi were accomplices, their evidence should be given little weight; that the evidence of defendant and Mrs. Halleen establishes that defendant did not commit abortion. James and John Luthi were accomplices, and the rule that a conviction cannot be had upon the testimony of an accomplice applies. Proper instructions upon this point were given by the court. Under the

record, however, the witness Mrs. Halleen is also an accomplice, although the jury were not so instructed.

Defendant requested that the court instruct that Thelma May Carter, the woman upon whom the abortion was performed, was an accomplice, which request was denied by the court. This court has not passed directly upon that question. The statute under which defendant was prosecuted (section 1859, Comp. Stat. 1921) reads:

"Any person who administers to any pregnant woman, or who prescribes for any such woman, or advises or procures any such woman to take any medicine, drug or substance, * * * or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the penitentiary not exceeding three years, or in a county jail not exceeding one year."

Section 1860 provides:

"Any woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever, with intent thereby to procure a miscarriage, unless the same is necessary to preserve her life, is punishable by imprisonment in the county jail not exceeding one year or by fine not exceeding one thousand dollars, or by both."

Under this latter section a female in an abortion case may be prosecuted. This latter section does not define the same offense as in section 1859. The offense defined is the submitting to or soliciting an abortion upon herself and provides for a different punishment. It is generally held that the woman upon whom an abortion is performed is not an accomplice, but rather is a victim. In 1 R. C. L. pp. 87, 88, § 25, upon the subject, "Abortion," it is said:

"In the absence of any statutory provision to the contrary the accused may be convicted on the uncorroborated testimony of the woman. And even though the testimony that the woman gave before the magistrate on the pre-

liminary examination of the accused was false, a conviction on her uncorroborated testimony may be upheld. Though conviction on the uncorroborated testimony of an accomplice is prohibited, still where, under the statute against procuring a miscarriage, the woman on whom it is procured is not liable to indictment, she does not, by consenting to the unlawful operation, become an accomplice in the crime, and this is true even though the woman performs the operation upon herself at the instigation of the accused. The reason for this is that to render one an accomplice he must be punishable for the offense involved, and she is regarded as the victim of the crime rather than a participant in it. Though as a first impression it may seem to be an unsound rule that one who solicits the commission of an offense, and willingly submits to its commission upon her own person, should not be deemed an accomplice, while those whom she has thus solicited should be deemed principal criminals in the transaction, still in cases of this kind the public welfare demands the strict application of the general rule as to who are accomplices. * * *"

1 C. J. p. 331, § 111 (2), states the rule thus:

"While a woman on whom an abortion has been performed is not an accomplice so as to require corroboration of her testimony, within the rule requiring evidence in corroboration of an accomplice's testimony in order to convict, some statutes provide that a conviction shall not be had on the uncorroborated testimony of the woman. * * *"

Numerous authorities are cited in support of the text. See, also, Hammett v. State, 84 Tex. Cr. R. 635, 209 S. W. 661, 4 A. L. R. 347.

The second assignment challenges the instructions of the court No. 11 for the reason that it does not include the witness Thelma May Carter as an accomplice. This contention has been disposed of by what has just been said. It further challenges the court's supplemental instruction No. 15. The information alleges that the abortion was committed with an instrument; a particular description of which being to the county attorney unknown. The defendant testified that in his examination he had a speculum

in his hand, but that the examination was made with his finger. The young woman, of course, was unable to see just what acts were done by defendant, but testified that she saw him pick up an instrument, and that she suffered pain, and then heard him lay the instrument down, but could not testify whether the pain was caused by the instrument or otherwise, or by defendant's finger. After deliberating for some time the jury came into court and inquired if the finger was an instrument. The court thereupon gave in writing the supplemental instruction. It states in substance that the finger inserted into the private parts of the womb of a female with the willful, unlawful, and felonious intent to produce an abortion is an instrument within the meaning of the law. It is earnestly contended that the word "instrument" as used in the statute (section 1859, supra) means some scientific or surgical implement or tool. The statute enumerates two general means by which an abortion is committed: First, internal force as by the administering of drugs, medicines, or substance taken internally; second, external force by which any instrument or means of any kind is applied externally. No authorities upon the precise point raised are cited in the briefs of either party. The medical practitioner who performs abortions, unless under the conditions named in the statute, is a menace to society, and the statute should not be construed too narrowly, but should be considered in the light of its purpose, which is to prevent practitioners of medicine from performing abortions by administering or prescribing drugs or other substances, or by applying any external force to the womb or generative organs to destroy or cause an expulsion of the fetus.

Extreme nicety of pleading is not required, and it will not be held a variance if the allegation of use of an instrument be not proven with strictness, particularly where the information, as in this case, charges the instrument to be unknown. Proof of the use of the

finger in applying force is sufficient proof of the use of an instrument.

Complaint is next made that the court overruled the motion for a new trial on the ground of misconduct of the jury. The motion upon this point is supported by the affidavit of three jurors that their verdict was a compromise, and they did not know that the verdict of conviction would revoke defendant's license to practice medicine, and they believed the court could suspend sentence, and they were not convinced of the guilt of the defendant beyond a reasonable doubt.

It is fundamental that jurors may not impeach their verdict by an affidavit upon any matter inhering in the verdict itself. They will not be permitted to stultify themselves by affidavit that they misunderstood the evidence or the instructions, or were not convinced, or any other matter resting alone in the juror's breast. Vanderburg v. State, 6 Okla. Cr. 485, 120 P. 301.

They may, of course, show any matter occurring during the trial which does not essentially inhere in the verdict, as that they were improperly approached by any one, or that there was misconduct of the bailiffs, or that evidence out of court came to them in such matters. The court here properly rejected the affidavits and the assignment is without merit. Keith v. State, 7 Okla. Cr. 156, 123 P. 172; Overton v. State, 7 Okla. Cr. 204, 114 P. 1132, 123 P. 175; Spencer v. State, 5 Okla. Cr. 7, 113 P. 224.

There is also some argument that there should have been a new trial on the ground of newly discovered evidence. In the motion for a new trial it is asserted that since the trial defendant has learned that Thelma May Carter stated to one of the witnesses for the state that on or about the 11th or 12th of June, prior to the date of the offense alleged, she went to a physician and surgeon in Pueblo, Colo., who performed an operation upon her for

the purpose of producing an abortion. It is contended that, if this could be shown, it would establish that the abortion that took place was the result of this operation. This evidence, if it exists, is impeaching, and it is not an abuse of discretion to overrule an application on the ground of newly discovered evidence otherwise sufficient for the purpose of procuring impeaching testimony. The motion, however, is wholly insufficient. It does not allege the name of the person to whom the witness made the alleged statement, nor the name of the alleged physician, nor set out the language of the alleged disclosure, but rests on the general statement that since the trial defendant has learned that prosecutrix made the general statement to some undisclosed person. This is not sufficient upon which to predicate a motion for a new trial on the ground of newly discovered evidence, and there was no error in overruling the motion. Wampler v. State, 34 Okla. Cr. 141, 245 P. 69; McKenzie v. State, 34 Okla. Cr. 233, 245 P. 1005.

We find no error which requires a reversal.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.