# EARL QUINN v. STATE.

No. A-8586.   Sept. 22, 1933.
Rehearing Denied Oct. 13, 1933.
(25 Pac. [2d] 711.)

Mathers & Mathers and Otjen & Carter, for plaintiff in error.

J. Berry King, Atty. Gen., F. M. Dudley, Asst. Atty. Gen., O. B. Martin, Co. Atty., and Dave Bucher, Co. Atty. (John V. Roberts, of counsel), for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Garfield county of the crime of murder in the killing of Jessie Griffith, and his punishment fixed by the jury at death.

Defendant was originally convicted in the district court of Kay county of the crime of murder, and his punishment fixed by the jury at death.   On November 29, 1932, this court reversed that case, with directions to the court to grant a change of venue (Quinn v. State, 54 Okla. Cr. 179, 16 Pac. (2d) 591); the grounds for such reversal being:

(a)   Error of the court in overruling defendant's application for a change of venue;

(b)   Error of the court in refusing the state's and defendant's request that the witness Reber, in or out of the

presence of the jury, be allowed to make ballistic and other tests of the weapon claimed to have been used in connection with the offense;

(c) Error of the court in refusing the application of defendant, consented to by the state, directing the exhumation of the bodies of the Griffith sisters, that the bullets which caused the deaths might be brought into court and ballistic tests made by competent persons;

(d) Error of the court in admitting the testimony of the state's witness Myrtle Patton as to rape claimed to have been committed upon her by the defendant 30 days prior to the date of the crime for which he was being tried.

The change of venue having been granted, the bodies exhumed, the ballistic tests made, and the evidence of Myrtle Patton excluded, these questions are entirely eliminated from the case at bar, and it is very much simplified.

Defendant complains the court erred in overruling his motion for a new trial:

First. Because of newly discovered evidence.

This newly discovered evidence consists of an affidavit of Anna E. Judson that on the morning of December 28th she was driving from Blackwell to Tonkawa and saw ahead of her a coupe occupied by two women; that this coupe stopped in Tonkawa and the women were engaged in conversation with some man. The time fixed by her, however, rendered it improbable that the Griffith sisters were the parties she saw.

Also an affidavit of Fred Gardner that at about 7 o'clock on the morning of December 28th he was driving a truck on his route from Blackwell to Oklahoma City; that at the intersection of the pavement south of Tonkawa

with the dirt road leading west, a man, very nervous and excited, stopped him by pointing an automatic pistol at him and forced him to drive him to Oklahoma City; and that this man was not the defendant.

This court has many times held it is not error to overrule a motion for a new trial on the ground of newly discovered evidence, where it is apparent the evidence would not change the result of the trial.

Second. Because the court erred in overruling the motion for a new trial on the ground that defendant discovered after the trial that T. W. Clark, who testified in rebuttal for the state, was an ex-convict, having served a term in the penitentiary for rape, and that his reputation for truth and veracity was bad.

In Caple v. State, 3 Okla. Cr. 622, 105 Pac. 681, this court said:

"A new trial will not be granted on the ground of newly discovered evidence to impeach the reputation for truth and veracity of witnesses for the state." McKenzie v. State, 34 Okla. Cr. 233, 245 Pac. 1005.

Third. It is contended the court erred in overruling his motion for a new trial on the ground that some of the jurors who sat in the trial of the case made untrue answers on their voir dire examination and were biased and prejudiced against defendant, which prevented him from having a fair trial. To support this charge defendant called certain witnesses who testified they had heard the jurors, George Rummery, Clifford Bundy, Bob Gille, Roy Cochran, and R. C. Thomas, make statements and express opinions of the guilt of defendant, indicating their bias and prejudice. To rebut this charge, the state called the jurors, who, each for himself, separately denied making any of the statements or expressing any opinion as to the

guilt or innocence of defendant, and in addition the state called witnesses to impeach some of the witnesses called by defendant.

The granting or denying of a new trial on the ground of newly discovered evidence is within the sound discretion of the trial court, and the case will not be reversed unless an abuse of such discretion appears upon the record. It is apparent from the record that the evidence claimed to have been discovered by defendant, if introduced, would not change the result of the trial.

It is next contended the court erred in permitting the state to offer the evidence of the witness T. W. Clark, who testified in rebuttal, when in fact his evidence was in chief.

Defendant on cross-examination denied he was on Highway 177, in a Buick automobile, pursuing the deceased, who were riding in a Chevrolet coupe, seeking to crowd their coupe into the ditch and thus stop them. The witness Clark testified to being at the intersection of Highways 177 and 77, and to seeing a Buick coupe pursuing a Chevrolet coupe occupied by two women, and to hearing talk or screams coming from the pursued coupe. In Tingley v. State, 16 Okla. Cr. 639, 184 Pac. 599, this court said:

"It is discretionary with the trial court, in furtherance of justice, to permit evidence in rebuttal which would have been competent evidence in chief." Shires v. State, 2 Okla. Cr. 89, 99 Pac. 1100; Hampton v. State, 7 Okla. Cr. 291, 123 Pac. 571, 40 L. R. A. (N. S.) 43; Seigler v. State, 11 Okla. Cr. 131, 145 Pac. 308, 309.

Clark's evidence might have been introduced in chief had his name been served on defendant as required by the Constitution; but, being proper rebuttal, it was not error

for the trial court to permit the state to introduce the evidence for that purpose.

It is next contended the court erred in refusing to permit defendant to introduce certain evidence which he claimed tended to show the offense for which defendant was being tried had been committed by one Jim Coleman.

An examination of the tender shows the whole purpose of this evidence was to prove Jim Coleman had a motive to kill the daughters of one Milt Harris, but due to a mistake in identity killed Jessie and Zexie Griffith instead. None of the tendered evidence tends to connect Coleman by any overt act with the commission of the offense.

In Phillips v. State, 29 Okla. Cr. 415, 203 Pac. 902, this court said:

"It is competent for the defendant to show, by any legal evidence, that some other person committed the crime charged, and that he had no participation in it. But this cannot be shown by testimony merely tending to show a possible motive on the part of another to commit the crime. The evidence offered must connect such other person with the fact; that is, some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than to the defendant, as the guilty party."

To the same effect are: Dykes v. State, 11 Okla. Cr. 602, 150 Pac. 84; Davis v. State, 54 Okla. Cr. 285, 19 Pac. (2d) 384.

In State v. Davis, 77 N. C. 483, that court said:

"On the trial of an indictment for murder, the declarations of a third party which have no legal tendency to establish the innocence of the prisoner are not admis-

sible as evidence in his behalf. Therefore evidence that a third party 'had malice towards the deceased, a motive to take his life and the opportunity to do so, and had threatened to do so,' is not admissible."

To the same effect are: Alston v. State, 63 Ala. 178; Carlton v. People, 150 Ill. 181, 37 N. E. 244, 41 Am. St. Rep. 346.

In most of the cases cited and relied on by defendant, the third party was shown to have been near the place at the time the offense was committed and there were other facts and circumstances tending to connect the third party with the offense. But no such state of facts is shown to exist in the evidence offered by defendant. Under the foregoing authorities, it was not error for the trial court to refuse defendant's offer to introduce the tendered testimony.

It is also contended there was misconduct on the part of the bailiffs in charge of the jury. The record does not support this contention.

It is next contended Mr. Roberts, special counsel appointed by the Governor to assist in the prosecution, was guilty of prejudicial conduct, which prevented defendant from having a fair and impartial trial.

The record discloses that during his argument Mr. Roberts said:

"I believe in that class of punishment like what is known as Missouri Justice, like where that fellow murdered that school teacher, and where the angry crowd tied him, hand and foot, across the top of the building and set it on fire. Mr. Mathers: We object to that statement and want a record on it. The Court: Sustained. Gentlemen of the Jury, you will not consider that statement of Mr. Roberts. That is not a part of the record in this

case and you will not consider it. Stay within the record, Mr. Roberts."

Ordinarily a case will not be reversed for improper remarks, for improper argument, or for misconduct of counsel, unless it appears that the acts complained of may have influenced the jury in arriving at their verdict and resulted in substantial prejudice to defendant. This principle has been applied in the following instances: Where defendant's guilt was clearly established by the evidence; where the verdict shows that the improper remarks had no effect; where no other verdict could have been found under a reasonable view of the facts. This rule finds support in: Williams v. State, 4 Okla. Cr. 523, 114 Pac. 1114; Allen v. State, 13 Okla. Cr. 395, 164 Pac. 1002, L. R. A. 1917F, 210. In Murray v. State, 24 Okla. Cr. 113, 217 Pac. 891, 892, this court said:

"A conviction will not be reversed on the ground of alleged misconduct of counsel for the state, unless upon consideration of the whole case, we can say that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might have in some degree influenced the verdict against the defendant."

The remarks of counsel were improper and uncalled for. Not often is any good purpose served by the appointment of special counsel where the county attorney or the Attorney General's office are in charge of the prosecution, but many times results in improper conduct similar to that complained of. Defendant's guilt was clearly established by the evidence and no other verdict than the one found could honestly have been returned. The remarks complained of were not on a material point or issue in the case. Upon consideration of all the evidence and that the trial court admonished the jury not to consider the remarks of counsel, and reprimanded him, it

cannot be said the jury was in the slightest degree influenced in rendering its verdict by such remarks.

It is next contended the court erred in permitting the introduction of evidence tending to show flight of defendant.

The state called several witnesses who testified to facts and circumstances tending to show the excited and nervous condition of defendant, his attempt to conceal himself, and his speedy exit from the scene of the crime; his abandonment of his wife and automobile at Wellington, Kan., in the nighttime; and that he was not seen any more for several months, until taken into custody some place in Nebraska or Iowa.

Flight is a circumstance tending to prove guilt. Pittman v. State, 8 Okla. Cr. 58, 126 Pac. 696; Jackson v. State, 12 Okla. Cr. 406, 157 Pac. 945; Colglazier v. State, 23 Okla. Cr. 23, 212 Pac. 332; Wettengel v. State, 30 Okla. Cr. 388, 236 Pac. 626. To constitute flight it is not essential that there should be an escape from jail or the officers, but it may consist of the departure from the place of the crime by one conscious of his guilt, even before suspected of the crime. Under the authorities above cited, the evidence tending to show defendant's flight was clearly admissible.

It is next contended the court erred in admitting certain incompetent evidence offered by the state against defendant:

First. That the court erred in permitting Charles Wagner, chief of police of Tonkawa, to testify to the discovery of the fatal gun, and that defendant's wife was present at the time he located the place where the gun was found.

The state contended at the trial the fatal gun found by Charles Wagner and introduced in evidence was the gun which defendant possessed on the night of the murders, and that the facts and circumstances surrounding the discovery and recovery of the gun tended to establish that the gun was one possessed by defendant on the night of and immediately before the killing.

In Commonwealth v. Johnson, 213 Pa. 432, 62 A. 1064, that court said:

"Facts learned by competent witnesses will not be excluded, because they may have been put on the track of the facts by information derived from the wife of the prisoner."

To the same effect is Welker v. New York Central Railroad et al., 275 Pa. 82, 118 A. 615, 616. In the body of the opinion, that court said:

"While the wife would not have been a competent witness against her husband, there is no rule of law which prevents a third person from instituting criminal proceedings based on facts learned through information given by the wife of the accused. The admission of such facts in evidence is not permitting the wife to testify against her husband."

In Clark v. State, 159 Tenn. 507, 19 S. W. (2d) 228, that court said:

"Testimony of third parties, where otherwise competent, was not rendered incompetent in prosecution of husband because facts related therein were based on extra-judicial and voluntary disclosures of wife."

Second. The court erred in permitting a hardware merchant to testify that a few days prior to the homicide he sold defendant's wife six cartridges of the same caliber and make as that used in the killing.

The state first introduced the shells found at the place of the homicide; next that defendant's wife purchased the same kind of shells; next that they occupied the same room for several days after this and before the homicide, where defendant had opportunity to obtain these shells; and, finally, that the bullets which killed the deceased came from the shells found at the scene of the homicide.

Without citing further authorities, it is sufficient to say the same rule would apply to the purchase of the shells as applied to the presence of defendant's wife with the officers at the place where the fatal gun was found.

It is next contended the court erred in permitting the introduction of the fatal gun.

If the gun used in the killing and introduced in evidence belonged to defendant and was in his possession at about the time the offense was committed, it was strong proof that defendant and no other did the killing.

The bodies having been exhumed on order of this court and ballistic tests made from the bullets, the state offered proof, through its expert, Mr. Reber, that the bullets which caused the death of the deceased were fired from the identical gun found by Wagner and introduced in evidence by the state.

Upon a trial for murder, where it appears the injuries were inflicted by a certain kind of instrument or weapon, evidence that defendant had such a weapon in his possession before the murder is admissible. Morgan v. Territory, 16 Okla. 530, 85 Pac. 718; 16 C. J. 546. It is always competent to introduce testimony in a capital case tending to show possession by defendant of the means of committing the homicide in the manner in which it

was committed. Michie on Homicide, vol. 1, page 857; Jones v. State, 137 Ala. 12, 34 So. 681; People v. Place, 157 N. Y. 584, 52 N. E. 576; Wheeler v. State, 61 Tex. Cr. R. 527, 136 S. W. 68; Clark v. State, 159 Tenn. 507, 19 S. W. (2d) 228; State v. Walker, 133 Iowa, 489, 110 N. W. 925.

The pistol, bullets, and shells admitted in evidence having been sufficiently identified as the fatal pistol, bullets, and shells, were properly admitted by the court.

It is next contended the court erred in permitting the doctor who made the post mortem examinations to testify that in his opinion Jessie Griffith had been raped.

A question asking for an opinion of the cause of death or the fact of rape, based upon a given hypothesis, or upon personal knowledge of the condition, or both, is one that a properly qualified witness may be allowed to answer. This rule is supported by authorities too numerous to mention.

Defendant complains of other errors, but they are without any substantial merit.

The case at bar is much stronger than that presented at the former trial. The errors which required a reversal of the former case are none of them present in this case. The exhumation of the bodies, the making of the ballistic tests, and the identification of the death weapon as belonging to defendant make out a perfect case. There can be no doubt of defendant's guilt.

Since the evidence clearly establishes that the defendant is guilty of one of the most heinous crimes in the history of the state, and since the errors of law complained of are without any substantial merit, the cause is affirmed.

The original time for execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by this court that the judgment and sentence of the district court of Garfield county be carried out by electrocution of the defendant on the 24th day of November, 1933.

EDWARDS, P. J., concurs. DAVENPORT, J., does not participate.