No. 14,750.

POLLY *v.* THE PEOPLE.
(108 P. [2d] 220)

Decided November 25, 1940.

Mr. CHARLES T. MAHONEY, Mr. CHARLES A. MURDOCK, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, for the people.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

PLAINTIFF in error, to whom we hereafter refer as defendant, was convicted of second degree murder, under the provisions of section 56, chapter 48, '35 C.S.A., and sentenced to imprisonment for a term of ten years. The judgment is here for review.

■ Defendant, who is licensed to practice medicine and has followed that profession for a number of years, is charged with causing the death of a young woman by procuring an abortion. There are two counts in the information, the first charging that defendant procured a miscarriage by the use of an instrument, the second alleging the procurement of a miscarriage by the administration of poisons and drugs. The second count was withdrawn from the consideration of the jury at the conclusion of the evidence. Defendant admitted that she treated deceased, but denied the charge of abortion, asserting that she administered emergency treatments for hemorrhages. Decedent died about nine days later, after medical treatment by a physician, who also had advised with her prior to her treatments by defendant. Two of the errors assigned relate to conversations with this physician, the first occurring July 31, 1938, at the home of deceased, and another on August 1, 1938, at a hospital. Evidence of the last conversation was admitted over the objections of defendant, on the ground that the statement was a dying declaration. The evidence concerning the conversation on July 31, although first ruled by the trial court to be inadmissible, subsequently was admitted on the theory that the scope of the cross-examination of the physician by defendant's counsel rendered it admissible. We shall first consider the conversation of August 1st. Prior to that date deceased had refused to discuss any of the details of the transaction. She

finally consented, August 1, to talk to the physician alone, all other persons having left the room. No other person heard the conversation, which was brought about by the physician, as disclosed by the evidence, as follows: "I told her that she was in very, very serious condition, she would have to have special nurses on this case; if she had the least chance in the world of getting well, she would have to tell me the whole truth as to what happened, because the treatment that she would have was depending on her statement as to what had happened previously, and without this proof she had no chance whatsoever of getting well, and she said that she would tell me anything I wanted, but not as long as anybody else was in the room."

It clearly appears from the record that the statements of deceased at that time were made with great reluctance, and on the plea of the physician that she would have no chance of recovering unless she confided in him. No other conversations about the matter affecting defendant occurred between them thereafter. August 4 the patient became semi-conscious, this condition being the first indication that she positively would pass away before the day terminated. She died near the close of that day.

In our opinion, the only reasonable construction to be placed on this conversation between deceased and the physician is, that he was attempting to obtain a history of the case in order to determine what treatment should be administered to bring about a recovery. There is nothing in the record to indicate that during this conversation the patient was conscious of approaching death. As already noted, it was not a voluntary statement, but was made through persuasion. Under these circumstances, the declaration, if it may be dignified as such, did not satisfy the requirements of section 1, chapter 145, Session Laws of 1937, pages 557, 558, so as to make it admissible. This section requires that to render such statements competent as evidence, "* * * it must be

satisfactorily proved: 1. that at the time of the making of such declaration he was conscious of approaching death and believed there was no hope of recovery; 2, that such declaration was voluntarily made, and not through the persuasion of any person; * * *." The admission of this evidence of the physician, as disclosed by the record, was prejudicial error. *Clark v. People,* 103 Colo. 371, 86 P. (2d) 257. The case of *Reppin v. People,* 95 Colo. 192, 34 P. (2d) 71, cited by the people in support of admissibility, can readily be distinguished from the facts in the present case. In that case the evidence disclosed that declarant was told that he was going to die. In the instant case the patient was advised that by informing the physician of what had happened she was making a recovery possible. Moreover, the Reppin case was decided prior to the enactment of section 1, supra. Evidence of the conversation of July 31, at the home of deceased, was objected to by counsel for defendant on the ground that it did not meet the requirements of a dying declaration, which objection the trial court sustained. After cross-examination on rebuttal, however, as above mentioned, the testimony was admitted. From a careful search of the record pertaining to this cross-examination we fail to find any testimony which would justify the admission of evidence concerning this conversation. There was some reference to it in the cross-examination, but there was no inquiry which would disclose the actual conversation. Admission of the evidence was error.

■■ A statement was obtained from defendant by members of the district attorney's office previous to the trial. Counsel for defendant assert that it was obtained as the result of a misleading statement on the part of a member of the district attorney's staff, to the effect that the trial court could grant probation in case of a conviction of the offense involved. What really occurred at that time is a subject of controversy, and in such circumstances, the court's ruling controls. A dispute as to

this question also arose between counsel during argument to the jury by counsel for defendant. After some discussion as to the law, the court rightly advised the jury that whether probation could be granted in the case had no bearing upon the issues. The court did not err in its ruling concerning this matter.

██ No error was committed by the trial court in refusing defendant's tendered instructions numbered 1, 2, 3 and 4. The theory advanced as a basis for these instructions was fully covered by the court's instructions numbered 5 and 8. The other instructions tendered and refused related to a definition of circumstantial evidence. The record discloses both direct and circumstantial evidence. The statement by defendant to the district attorney was direct evidence, its interpretation and the facts contained therein being in dispute. There also was some circumstantial evidence, such as to the treatment administered deceased by defendant, and particularly the purpose thereof. Under such circumstances, an instruction defining circumstantial evidence is proper. 16 C.J., p. 1009, §2433. While we do not hold that the refusal to give such an instruction was prejudicial error, in the event of a retrial, with the question of the dying declaration eliminated, such an instruction might be necessary.

██ Defendant objected to the following instruction given by the court: "You are instructed that an instrument, as referred to in the information and these instructions, is any object which is used for the purpose of causing an abortion or miscarriage." It is urged that "any object" broadened the statute beyond the legislative intent, and that the law means only instruments of a surgical nature. Section 56, supra, reads in part: "* * * shall use, or cause to be used, any instrument of whatsoever kind, with the intention to procure the miscarriage * * *." There is evidence that some packing and gauze was used. There is circumstantial evidence from which it might be inferred that an instrument was

used. We would not limit the language, "any instrument of whatsoever kind," to surgical implements. We believe, however, that the statute contemplates the use of an instrument of whatsoever kind, with intent to procure a miscarriage, in order to constitute the offense. The instruction, therefore, was too broad in this respect. The only reported case on this point which has come to our attention is an opinion by the Criminal Court of Appeals of Oklahoma—*Wilson v. State,* 36 Okla. Crim. 148, 252 Pac. 1106—where the statute contains the following language: "any instrument or other means whatever." In that case the court held that the use of fingers, with the necessary intent, was sufficient to satisfy the statute. Our statute is not so comprehensive, and since all doubts are resolved against criminal statutes and in favor of the defendant, we are not inclined to include "any object" as an "instrument" within the meaning of section 56, supra. See *People v. Mooney,* 87 Colo. 567, 571, 290 Pac. 271.

Another instruction the giving of which is assigned as error is the following: "You are instructed that when a physician inserts into the womb of a pregnant woman instruments calculated to produce irritation and serious derangement of the female economy and the abortion follows, the intention to produce that result is a necessary conclusion from the act." The correctness of this instruction is seriously challenged as not a correct statement of the law. The language of the instruction is taken verbatim from the opinion in *Dougherty v. People,* 1 Colo. 514, 518. In that case the crime charged was that the defendant administered to, and caused to be taken by, one Maria Casey a noxious and destructive substance, with intent thereby to produce miscarriage. No charge of murder was involved. The language of the court, which is incorporated in the instruction here, was used in discussing the validity of the following instruction: "If the jury believe from the evidence that the prisoner administered or caused to be taken by Maria

Casey, named in the indictment, any noxious or destructive substance or liquid with intent to procure a miscarriage of said Maria Casey, then the jury should find the said defendant guilty. It must appear, however, in order to such conviction, not only that the prisoner gave such drug, or substance, or liquid, but that it was actually taken into the person of said Maria Casey. It will suffice, however, that prisoner procured and gave the drug or substance to said Maria with the intent named, and that she afterward took and swallowed such drug or substance, or some portion of it. And it is not necessary in order to be noxious and destructive, within the meaning of the statute, that such drug should be poisonous, as the term is commonly understood, or should be capable of actually producing the miscarriage. It will be sufficient if, upon the consideration of all the testimony, it shall appear to the jury that such drug, so administered (if any), is unwholesome and might probably occasion injury or derangement of the system to a woman pregnant with child." Our recital of this instruction should not be construed as an approval thereof. There was no instrument involved in that case. The language quoted therefrom was mere dictum. This is another illustration of the caution to be exercised by trial judges in employing verbatim the language used in a legal discussion contained in an opinion and adopting it as an instruction. The meaning of the word "calculated" as used in this instruction is doubtful. If the word "intended" had been substituted therefor a different problem might be presented. The word "calculated" may mean that the act may produce a certain effect, whether intended or not. It is synonymous with "fitted," "adapted," or "suited." Moreover, when we consider that the last phrase in the instruction—"the intention to produce that result is a *necessary* conclusion from the act"—the jury practically is told that if a physician inserts an instrument into the womb of a pregnant woman which produces irritation and a serious derangement of the

female economy, the necessary conclusion is that of guilt of procuring an abortion. The language adopted from the Dougherty opinion is not a correct statement of the law, when considered in connection with instructions to the jury under the circumstances before us. It would place every physician in jeopardy each time he used instruments under the circumstances described in the instruction. We may assume that instruments may properly be used by physicians under conditions not involving an intention to perform a miscarriage. It was error to give this instruction.

 Counsel for defendant objected to given instruction No. 15, which reiterates by special designation the interest of defendant in the result of the prosecution. In instruction No. 14, which is a general credibility instruction, the court expressly includes the defendant therein and her interest. The reiteration of this element in instruction No. 15 somewhat overemphasizes that phase of the case. We suggest that fairness and impartiality can perhaps better be served by not singling out the defendant in more than one instruction relating to the interest he or she may have in the result. Moreover, counsel for the people, in argument, usually call the jury's attention specifically to what defendant's interest is.

A careful perusal of the entire record convinces us that denial of defendant's motion for a directed verdict was not error.

Other questions are discussed in the briefs which, in view of our conclusions, we deem it unnecessary to decide.

The judgment is reversed and the case remanded for further proceedings in accordance with law.