No. 21913.

LAWSON F. PALMER *v*. THE PEOPLE OF THE
STATE OF COLORADO.
(424 P.2d 766)

Decided March 6, 1967.

94

RICHARD E. HARTMAN, EUGENE DEIKMAN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES F. PAMP, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

LAWSON PALMER, plaintiff in error, was charged with having procured an unlawful abortion and with conspiracy to procure an abortion. He will be referred to herein by name or as the defendant. Palmer pleaded not guilty and not guilty by reason of insanity to both charges. The crimes allegedly occurred on January 29, 1962, but there was considerable delay in bringing Palmer to trial due to reasons not connected with the

legal proceedings here. See *Palmer v. Dist. Court*, 156 Colo. 284, 398 P.2d 435, 11 A.L.R.3rd 1380 (1965). Finally, defendant was tried in February, 1965, and convicted by a jury of the charge of procuring an abortion. Defendant was then sentenced to a term in the state penitentiary. The charge of conspiracy had been dismissed at the close of the prosecution's case and the People assign cross-error in that regard. The common thread running through Palmer's defense is that although he produced the abortion he was motivated by "insane delusions of altruism making him helpless not to aid Miss ........................ under the circumstances."

Palmer urges five grounds for reversal on writ of error:

(1) A failure to instruct the jury specifically that neither hands nor fingers constitute an "instrument" under the statute which defines the crime of unlawful abortion.

(2) A failure to instruct the jury that certain testimony, *i.e.*, that of Jerry Golden, allegedly related solely to the charge of conspiracy and should be disregarded in its entirety.

(3) The admission of testimony as to defendant's sanity of unendorsed witnesses, Doctors Cohen and Hilton.

(4) The failure to strike the entire testimony of psychiatrist Dr. Cohen since he purportedly did not apply the legal test of insanity in reaching his conclusions as to Palmer's sanity, and because he did not know what crime the defendant was charged with. And,

(5) The purported failure to preserve the original statement of the prosecuting witness in compliance with Colo. R. Crim. P. 16(b) and (c).

The evidence shows that on January 29, 1962, the prosecuting witness, who was about three months pregnant, and one Jerry Golden went to the Kenmark Grill in Denver and there met with a woman who was identified only as "Rose." The victim next testified as follows: Rose took her to the Glenarm Clinic where Dr. Palmer,

then a licensed Osteopath, took her to an examining room and placed her on an examination table. He then showed her a long-handled instrument with short cutting blades and some gauze wet with a substance which smelled like iodine. He told her that he would cut her cervix and insert the gauze. An insertion of some object was then made, although the witness did not see what it was; however, she felt a sharp pain. Within 48 hours she experienced a miscarriage and continued to hemorrhage for approximately three weeks at which time she consulted her family physician and was treated in a hospital. Her physician testified that she had been pregnant and had miscarried but that her cervix had not been cut.

A great deal of the evidence concerned Dr. Palmer's lengthy history of mental disturbance, though he did not testify at the trial. Two expert doctors concluded that, though disturbed, Palmer was legally sane on the date of the alleged crime; another one, however, testified that he was legally insane. As above noted, by the jury's verdict of guilty, he was found to be sane. There was no testimony to controvert the above events concerning the abortion or the events leading up to it.

Palmer was charged under C.R.S. '53, 40-2-23 which reads in pertinent part:

"* * * every person who shall administer, or cause to be administered, or taken, any such poison, substance or liquid, or shall use, or cause to be used, any instrument of whatsoever kind, with the intention to procure the miscarriage of any woman then being with child, * * *."

Following the People's case, the defendant moved for a judgment of acquittal as to the abortion count asserting that there was no evidence of anything being used other than his hands and fingers to start the aborting process; however, the only evidence to that effect was hearsay testified to by defendant's psychiatrist. Opposed to that is the victim's testimony which could

reasonably lead to the conclusion that the defendant had actually used the metal instrument in question. Obviously the jury could have concluded that the metal instrument with the gauze on it was in fact the object used to procure the abortion. And this is so even though it is also urged that the long-handled instrument was not used to cut the cervix but only to insert the gauze packing afterwards. In any event, adequate circumstantial evidence exists here to sustain the conviction of procuring an illegal abortion.

At this time we are constrained to comment on the defendant's premise which ignores the victim's testimony of the use of the metal instrument, whereby he asserts that hands and fingers are not included in the words "any instrument of whatsoever kind," in the statute. He urges that his motion to dismiss should have been granted or that the jury at least should have been instructed on such a theory. He cites as authority for this proposition the case of *Polly v. People*, 107 Colo. 6, 108 P.2d 220 (1940).

In *Polly* we held the giving of an instruction to be error which included the following language:

"You are instructed that an instrument as referred to in the information and these instructions, is *any object* which is used for the purpose of causing an abortion or miscarriage." (Emphasis added.)

We there noted that to define instrument as "any object" broadened the meaning of the statute and was therefore erroneous. Such is not the case here with Instruction No. 14 which reads as follows:

"The word 'instrument' as used in the previous instruction defining unlawful abortion, means an *artificial object*, by means of which any work is performed or result is effected; *a tool, a utensil, an implement.*" (Emphasis added.)

This Instruction, by its very terms, might be said to exclude hands and fingers and if so, it would be more favorable to the defendant than the exact wording of

the statute. A defendant cannot complain of an instruction which is more favorable to him than the strict wording of a statute. We do not limit the instruction to that interpretation, however, because the term "any instrument" as used in the abortion statute is not limited to a detached physical object. The legislative purpose here was to prevent abortions other than for lawful purposes or by natural causes. Thus, anything foreign to the female's body which is unlawfully inserted, even fingers or hands, are instruments within the terms of the statute. In so far as *Polly, supra,* is in conflict with this view, it is expressly overruled. The better view is that the word "instrument," as used in an abortion statute, is not used in a narrow or technical sense but is broad enough to include any illegal means by which an external force is applied to produce a miscarriage. E.g., *Wilson v. State*, 36 Okla. Crim. 148, 252 Pac 1106 (1927), where an allegation in an information charging the procuring of an abortion by means of *an instrument* was held to be sufficiently met by proof of the use of a finger for that purpose. The court there stated that "* * * the statute should not be construed too narrowly, but should be considered in the light of its purpose, which is to prevent practitioners of medicine from performing abortions by administering or prescribing drugs or other substances, or by applying external force to the womb or generative organs to destroy or cause an expulsion of the fetus * * *." To the same effect that fingers used to cause an abortion are an "instrument" within the meaning of such a statute, see *Shaw v. State*, 73 Tex. Crim. 337, 165 S.W. 930 (1914).

■ Defendant asserts that it was error not to strike the entire testimony of Jerry Golden which he asserts was introduced only as to the stricken conspiracy charge. The contention is without merit. This testimony was introduced at least partially to rebut the alleged insanity, and to show that money was paid over; it was also introduced to corroborate the statement of the prosecuting

witness as to how she got to Palmer's office. Golden's acts can also be labeled as part of the res gestae since this was a connected series of events. In any event, the effect of his testimony was limited when the jury was properly instructed that it was to consider *only* the charge of unlawful abortion.

As to Palmer's contention that it was error to allow the expert witnesses, Dr. Cohen and Dr. Hilton, to testify since the prosecution had failed to endorse these witnesses — we also find no merit. The record discloses that the testimony of these witnesses related solely to the mental state of the defendant and was presented on rebuttal to defendant's psychiatrist-witness, a Dr. Hart'aub. We have held that it is not necessary for the prosecution to endorse rebuttal witnesses. *Schreiner v. People*, 95 Colo. 392, 36 P.2d 764 (1934); *Ingles v. People*, 90 Colo. 51, 6 P.2d 455 (1931). Nor is it necessary for the People to put on evidence of a defendant's sanity in their case in chief, since the presumption of sanity will operate until some evidence to the contrary is presented. *Becksted v. People*, 133 Colo. 72, 292 P.2d 189 (1956); *Ingles, supra.*

Nor is there merit to the defendant's argument that Dr. Cohen's testimony should have been stricken

(1) because he allegedly applied the wrong test of insanity; and

(2) because he did not know what crime the defendant was charged with.

C.R.S. 1963, 39-8-1(2) sets forth the applicable test of insanity as follows:

"* * * 'A person who is so diseased in mind at the time of the act as to be incapable of distinguishing right from wrong with respect to that act, or being able so to distinguish, has suffered such an impairment of mind by disease as to destroy the will power and render him incapable of choosing the right and refraining from doing the wrong, is not accountable; * * *.' "

A review of Dr. Cohen's testimony reveals

that it met the statutory test and indicates a sufficient understanding in order to determine legal sanity or insanity. Expert testimony is not conclusive on the jury and must be weighed along with all other testimony. Since the question of sanity or insanity is solely one for the jury, there was no error in admitting Dr. Cohen's testimony. See *Leick v. People*, 136 Colo. 535, 551, 322 P.2d 674 (1958); *Wymer v. People*, 114 Colo. 43, 160 P.2d 987 (1945); *Ingles v. People, supra*, at 57.

As to Dr. Cohen's negative answer to a question as to whether he knew what crime defendant was charged with, suffice it to say the question itself was immaterial and irrelevant to his testimony as to insanity.

 Palmer's fifth allegation of error concerns a statement taken from the prosecuting witness at the hospital concerning her abortion. The prosecuting witness related how this was taken down on yellow ruled paper, however, the original at the trial was one typed sheet on white paper. It was two parts of the latter that were excised by the court and as deleted, the instrument was made available under Colo. R. Crim. P. 16(b) and (c). On objection to the deletions, counsel for defendant was told that only irrelevant material had been excised. He then moved that the original, from which two portions had been deleted, be made a part of the record for review purposes even though he was not permitted to examine it at that time. This clear right was improperly denied him.

Colo. R. Crim. P. 16(b) and (c) provide in pertinent part as follows:

"(b) Witness' Statements. After a witness called by the State has testified on direct examination, the court shall on motion of the defendant order the prosecuting attorney to produce any statement of the witness in the possession of the prosecuting attorney or under his control which relates to the subject matter to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the witness'

testimony the court shall order it to be delivered directly to the defendant for his examination and use.

"(c) Irrelevant Matters. If the State claims that any statement ordered to be produced under this rule contains matter which does not relate to the subject matter of the witness' testimony, the court shall order the State to deliver the statement for the court's inspection in chambers. Upon such delivery the court shall excise the portions of the statement which do not relate to the subject matter of the witness' testimony, then direct delivery of the statement to the defendant for his use. If pursuant to such procedure any portion of the statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the defendant's guilt, the entire text of the statement shall be preserved by the State and, in the event the defendant seeks review, it shall be made available to the reviewing court for the purpose of determining the correctness of the trial judge's ruling. * * *."

 Because of the trial court's erroneous ruling, neither the typed original nor the excised copy initially appeared in the record here. Under our plenary power, however, during the consideration of this case, we have ordered that those two documents be certified to us as a part of the record and delivered to the court. Such has been done and we have now examined them and the deletions. We find that the material excised was in fact irrelevant and the trial court's removal of it was proper. Issue is made here, though, as it was in the trial court, that the first draft of the statement as taken down in handwriting at the hospital, has not been made available to us. Suffice it to say in this regard that the prosecuting witness identified the original used in the trial court as Exhibit A as substantially what she had told the investigator at the hospital. The prosecutor stated to the court that Exhibit A was the only document in his possession and that to his knowledge it was the only thing that could in any way be construed to be a state-

ment of the prosecuting witness. Though apparently the investigator at the hospital made some notes from which Exhibit A was composed, that is immaterial here. All that the rule requires is that the People produce whatever statement has been made by a witness and which is *in its possession.* That was done here and the one furnished was properly identified. We find no error in this regard and no prejudice has been shown by the defendant. See *Hayes v. U.S.,* 329 F.2d 209, 220 (8th Cir. 1964) for the need to show prejudice from such a ruling under somewhat similar circumstances but under a more restrictive Rule 16, where the original notes had been destroyed, and a "smooth report" compiled in part therefrom was introduced into evidence.

As to the assignment of cross-error by the People because the trial court at the close of the People's evidence granted the defendant's motion for a judgment of acquittal on the conspiracy count, a different problem arises.

The evidence was that the prosecuting witness and Golden went to the Kenmark Grill in Denver on January 29, 1962, to meet a woman known only as "Rose." They did so meet her there, and Golden paid Rose $400 for an abortion for the prosecution's witness. Immediately thereafter the victim accompanied Rose to Palmer's office where Rose went into a separate room with the defendant for a short time, and then she left the premises. It was then that the defendant took the victim into an examination room and performed the abortion.

In our view such evidence, when considered in a light most favorable to the People, presented a prima facie case against the defendant on the count of conspiracy since such may be established by inference from proven facts. *Gomez v. People,* 152 Colo. 309, 381 P.2d 816 (1963). The circumstantial evidence here is consistent with the hypothesis that Palmer made an illegal agreement and conspired with Rose to perform the abortion. Where there is some competent evidence

favoring the prosecution on a charge, a verdict should not be directed. See *Abeyta v. People*, 134 Colo. 441, 444, 305 P.2d 1063 (1957); *People v. Urso*, 129 Colo. 292, 297, 269 P.2d 709 (1954); 23A C.J.S., *Criminal Law* § 1145 (3)(d).

The judgment is affirmed as to all grounds urged for reversal by the defendant and is disapproved as to the cross-error.

MR. CHIEF JUSTICE MOORE concurs in the result.