**Otis T. CARR, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A–12907.**

Court of Criminal Appeals of Oklahoma.

Jan. 11, 1961.

Rehearing Denied March 1, 1961.

Hubert Gibson, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Otis T. Carr, hereinafter referred to as. the defendant, was charged by information in Oklahoma County with the offense of selling securities without registering the same with the Oklahoma Securities Commission (71 O.S.A. § 53) and appeals. He was tried before a jury, found guilty and assessed his punishment to pay a fine of $5,000.

The defendant appeals to this court upon two assignments of error:

1. District Court had no jurisdiction of offense charged—a misdemeanor.

2. The court erred in admitting deposit receipt with insufficient identification.

The assignments shall be discussed in the order in which they appear in defendant's. brief.

■■ Defendant contends that the charge as set forth in the statute (71 O.S.A. § 53) is made a misdemeanor and not a felony by virtue of the punishment section of said statute. The punishment section says:

"whoever violates any provision of this Act shall be punished by a fine of not more than five thousand ($5,000.00)

dollars or by imprisonment for not more than three (3) years, or by both such fine and imprisonment."

Defendant refers to the statute classifying crimes 21 O.S.A. § 4:

"Crimes are divided into: 1. Felonies; 2. Misdemeanors."

21 O.S.A. § 5: "A felony is a crime which is, or may be, punishable with death, or imprisonment in the State prison."

21 O.S.A. § 6: "Misdemeanor defined. Every other crime is a misdemeanor."

Thus, defendant argues that since the statute is silent as to the place of imprisonment that the crime does not constitute a felony but only a misdemeanor. Though the contention of defendant as above stated is by no means frivolous, the authorities hold adversely to defense's argument. In the case of State v. Young, 20 Okl.Cr. 383, 203 P. 484, the court passed upon a similar matter involving our conspiracy statute, 21 O.S. 1951 § 424, which provides a penalty "of not more than ten thousand dollars ($10,000) or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court or jury". It is readily observed that this statute is likewise silent as to the place of imprisonment. Syllabus 1 of that opinion says:

"Chapter 260, Session Laws 1915, making it a *crime* for two or more persons to conspire to commit any offense against the state of Oklahoma, or to defraud the state of Oklahoma in any manner, or for any purpose, and providing that 'all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars ($10,000) *or to imprisonment for not more than two years* or to both fine and imprisonment in the discretion of the court or jury', *creates and defines an offense that is a felony.*"

In the body of the opinion the court said in part:

"The test by which to determine the question of jurisdiction to try the indictment in this case is, Does this section define an offense that is a felony? *The definitions of 'felony' and 'misdemeanor' in this state are statutory, and not constitutional.* Under the provisions of our penal code all crimes are classed as felonies or as misdemeanors, accordingly as they are or are not punishable by imprisonment in the penitentiary. Sections 2085, 2086, and 2087, Rev.Laws. *And the test by which to determine whether an offense defined by the statute shall be deemed a felony or misdemeanor is made to depend upon whether the same is punishable by imprisonment in the penitentiary, or in the county jail.* In statutes creating or defining offenses, the language usually expressly indicates whether the offense is to be deemed a felony or misdemeanor. *It will be noticed that the statute upon consideration is silent in reference to the place of imprisonment.*"

In a very early case, Ex parte Cain, 1 Okl. Cr. 7, 93 P. 974, the court said:

"* * * the word 'imprisonment', in its ordinary sense, contemplates and means without the common jail, rather than the penitentiary."

This definition involved a punishment clause for the violation as "shall be punished on conviction thereof, by a fine not less than fifty dollars and by imprisonment not less than thirty days for each offense." However, in the body of the opinion the court said:

"In the opinion it is said that, under the statute (section *2091*, Rev.Laws), the maximum punishment for said offense is imprisonment in the county jail not exceeding one year, and by a fine not exceeding $500, or both such fine and imprisonment. We think this definition does not apply where a statute creates or defines a crime which is punishable by imprisonment for a term of years, and we have no doubt that the word 'imprisonment' as used in the statute in question has a broader signification, and empowers a court to sentence a person convicted to imprison-

ment in the penitentiary, when the punishment imposed is for a longer period than one year."

This interpretation no doubt is based upon the statute R.L.1910, Sec. 2091, 21 O.S.A. § 10:

"Except in cases where a different punishment is prescribed by this chapter, or some existing provision of the law, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding one year or by a fine not exceeding five hundred dollars, or both such fine and imprisonment."

Therefore, it is logical to assume that where the statute prescribes a punishment of imprisonment but is silent as to the place of imprisonment, the amount of time would govern the classification of the crime. If the maximum imprisonment fixed by the punishment clause is in excess of one year the crime is a felony and the legislative intent is to be so construed. In the case at bar three years maximum imprisonment is prescribed, therefore, the crime must be classified as a felony.

■■ Defendant next contends that the court erred in admitting in evidence a deposit receipt purportedly bearing the signature of defendant Otis T. Carr. The introduction of the receipt was objected to upon the grounds that the complaining witness Warnberg was not familiar with Carr's signature and therefore not qualified to identify it.

It appears from the testimony that the complaining witness had been given a deposit receipt upon payment of money to one Lari Kendrick who was, according to defendant, the southwestern representative for OTC Enterprises. Witness refused to make payment in exchange for the deposit receipt until it bore Mr. Carr's signature. Mr. Kendrick left and returned with the receipt signed by Otis T. Carr. The complaining witness testified:

"A. He attempted to do so, and I looked at it and I said, I don't see nobody's signature on here, but yours

Lari, and he said that's right. He said I have full authority to give you this, sign it and to sell it to you; and I said we won't do it that way, I don't know that you have full authority, I want Mr. Carr's signature on it; so he said well Mr. Carr is over in the motel, I will go over there and he took it and went over there and got this document signed by Mr. Carr and brought it back to me and I was familiar with Mr. Carr's signature."

On cross examination defendant answered as follows:

"Q. Did you see Otis T. Carr sign this instrument? A. I did not, but I recognized his signature."

Defendant further testified on cross examination as follows:

"A. Well, Lari said I have authority to issue this stock and to sign it and I said well you don't mean anything to me, I want Mr. Carr's signature on there and Lari left Dolores Restaurant and went across the street to the motel and came back again in a few minutes with the signature of Mr. Carr on there and I recognized it as I had seen it before in connection with this flying saucer. I had seen some literature about it."

"Q. What literature are you speaking of? A. Well, literature with reference to this flying saucer.

"Q. Where did you get that literature? A. In the mail.

"Q. Were you at that time corresponding with Mr. Carr? A. No, sir.

"Q. Did you ever write him?"

Defendant contends that the exhibit was inadmissible because the signature was not properly identified. It is to be observed that three times the witness testified he recognized or was familiar with Carr's signature. Though the first two expressions were not explored, defense counsel on cross examination elicited information that the witness was basing his knowledge solely upon a piece of literature he had received in the mail. We agree with defense counsel

in that a poor method of identification was employed and that a predicate should have been laid by which witness acquired knowledge of defendant's signature. The evidence as to the identification was apparently erroneously admitted but the court does not consider it of such a nature as to prejudice defendant. The record reflects that the state had a written statement of the defendant made while his counsel was present wherein the following testimony was given and introduced in chief.

"Q. I will ask you, Mr. Carr, do you know a man by the name of Gurney Warnburg (complaining witness) of Yukon, Oklahoma. A. Yes, sir; I have met the gentleman.

"Q. I will ask you if he has an instrument similar to this for a certain amount of money he has deposited with you. (Indicated Exhibit 2) A. Yes, sir, he does have."

Also, the record reveals that the defendant, when he took the stand readily admitted his signature as follows:

"Q. Now then, you have identified this particular form Mr. Carr, which is State's Exhibit '1' that is the instrument which Mr. Gibson inquired and talked about with you, you have examined it? A. Yes, sir.

"Q. And is that your signature on that instrument? A. Apparently it is, sir."

In view of the testimony above recited it is obvious that the evidence of the deposit slip would have been established independent of the complaining witness whose testimony as to the signature was admitted over the objection of the defendant. Therefore the court fails to see error of a prejudicial nature by admission of said testimony.

A review of the entire record indicates defendant had a fair trial represented by excellent counsel and the court finds no reason to interfere with the judgment and sentence of the trial court. The judgment of the trial court is therefore affirmed.

POWELL, P. J., and BRETT, J., concur.