OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE v. STATE OF OKLAHOMA
2023 OK 60
Case Number: 120376
Decided: 05/31/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 60, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE, on behalf of itself and its members, TULSA WOMEN'S REPRODUCTIVE CLINIC, LLC, on behalf of itself, its physicians, its staff, and its patients, ALAN BRAID, M.D., on behalf of himself and his patients, COMPREHENSIVE HEALTH OF PLANNED PARENTHOOD GREAT PLAINS, INC., on behalf of itself, its physicians, its staff, and its patients and PLANED PARENTHOOD OF ARKANSAS & EASTERN OKLAHOMA, on behalf of itself, its physicians, its staff and its patients, Petitioners,
v.
THE STATE OF OKLAHOMA, NICHOLE COOPER in her official capacity as court clerk of Adair County; TAMMI MILLER in her official capacity as court clerk of Alfalfa County; ANGELA NUTTALL in her official capacity as court clerk of Atoka County; TAMMIE PATZKOWSKY in her official capacity as court clerk of Beaver County; DONNA HOWELL in her official capacity as court clerk of Beckham County; CHRISTY MALTI in her official capacity as court clerk of Blaine County; DONNA ALEXANER in her official capacity as court clerk of Bryan County; PATTI BARGER in her official capacity as court clerk of Caddo County; MARIE HIRST in her official capacity as court clerk of Canadian County; RENEE BRYANT in her official capacity as court clerk of Carter County; LESA ROUSEY-DANIELS in her official capacity as court clerk of Cherokee County; LAURA SUMNER in her official capacity as court clerk of Choctaw County; METZI BROWN in her official capacity as court clerk of Cimarron County; MARILYN WILLIAMS in her official capacity as court clerk of Cleveland County; LaDONNA FLOWERS in her official capacity as court clerk of Coal County; ROBERT MORALES in his official capacity as court clerk of Comanche County; TERRY KELLEY in her official capacity as court clerk of Cotton County; DEBORAH MASON in her official capacity as court clerk of Craig County; AMANDA VANORSDOL in her official capacity as court clerk of Creek County; STACI HUNTER in her official capacity as court clerk of Custer County; CAROLINE WEAVER in her official capacity as court clerk of Delaware County; RACHELLE ROGERS in her official capacity as court clerk of Dewey County; SALLY WAYLAND in her official capacity as court clerk of Ellis County; JANELLE SHARP in her official capacity as court clerk of Garfield County; LAURA LEE in her official capacity as court clerk of Garvin County; LISA HANNAH in her official capacity as court clerk of Grady County; DEANA KILLIAN in her official capacity as court clerk of Grant County; JEANNA SCOTT in her official capacity as court clerk of Greer County; STACY MACIAS in her official capacity as court clerk of Harmon County; SUSAN BREON in her official capacity as court clerk of Harper County; TINA OKAS in her official capacity as court clerk of Haskell County; ASHLEY SANFORD in her official capacity as court clerk of Hughes County; TINA SWAILES in her official capacity as court clerk of Jackson County; KIMBERLY BERRY in her official capacity as court clerk of Jefferson County; CASSANDRA SLOVER in her official capacity as court clerk of Johnston County; MARILEE THONRTON in her official capacity as court clerk of Kay County; LISA MARKUS in her official capacity as court clerk of Kingfisher County; KAY RICHARDS in her official capacity as court clerk of Kiowa County; MELINDA BRINLEE in her official capacity as court clerk of Latimer County; MELBA HALL in her official capacity as court clerk of Le Flore County; CINDY KIRBY in her official capacity as court clerk of Lincoln County; CHERYL SMITH in her official capacity as court clerk of Logan County; WENDY HOLLAND in her official capacity as court clerk of Love County; SHAUNA HOFFMAN in her official capacity as court clerk of Major County; WANDA PIERCE in her official capacity as court clerk of Marshall County; JENIFER CLINTON in her official capacity as court clerk of Mayes County; KRISTEL GRAY in her official capacity as court clerk of McClain County; KATHY GRAY in her official capacity as court clerk of McCurtain County; LISA RODEBUSH in her official capacity as court clerk of McIntosh County; JODI JENNINGS in her official capacity as court clerk of Murray County; ROBYN BOSWELL in her official capacity as court clerk of Muskogee County; HILLARY VORNDRAN in her official capacity as court clerk of Noble County; APRIL FRAUENBERGER in her official capacity as court clerk of Nowata County; SHERRI FOREMAN in her official capacity as court clerk of Okfuskee County; RICK WARREN in his official capacity as court clerk of Oklahoma County; CHARLY CRINER in her official capacity as court clerk of Okmulgee County; JENNIFER BURD in her official capacity as court clerk of Osage County; CASSIE KEY in her official capacity as court clerk of Ottawa County; ILA POTTS in her official capacity as court clerk of Pawnee County; LORI ALLEN in her official capacity as court clerk of Payne County; PAM SMITH in her official capacity as court clerk of Pittsburg County; KAREN DUNNIGAN in her official capacity as court clerk of Ponotoc County; VALIER UELTZEN in her official capacity as court clerk of Pottawatomie County; TINA FREEMAN in her official capacity as court clerk of Pushmataha County; JAN BAILEY in her official capacity as court clerk of Roger Mills County; CATHI EDWARDS in her official capacity as court clerk of Rogers County; KIMBERLY DAVIS in her official capacity as court clerk of Seminole County; GINA COX in her official capacity as court clerk of Sequoyah County; MELODY HARPER in her official capacity as court clerk of Stephens County; M. RENEE ELLIS in her official capacity as court clerk of Texas County; KEVIN STEVENS in his official capacity as court clerk of Tillman County; DON NEWBERRY in his official capacity as court clerk of Tulsa County; JIM HIGHT in his official capacity as court clerk of Wagoner County; JILL SPITZER in her official capacity as court clerk of Washington County; LYNDA VERMILLION in her official capacity as court clerk of Washita County; STACI DAVEY in her official capacity as court clerk of Woods County; and TAMMY ROBERTS in her official capacity as court clerk of Woodward County, Respondents.
APPLICATION TO ASSUME ORIGINAL JURISDICTION FOR DECLARATORY AND INJUNCTIVE RELIEF AND/OR A WRIT OF PROHIBITION
¶0 The Petitioners filed an application to assume original jurisdiction seeking declaratory relief and to enjoin enforcement of two laws which criminalize abortion. We assume original jurisdiction, grant declaratory relief and deny injunctive relief and writ of prohibition. 
ORIGINAL JURISDICTION ASSUMED; DECLARATORY RELIEF GRANTED; INJUNCTIVE RELIEF AND WRIT OF PROHIBITION DENIED.
J. Blake Johnson, Overman Legal Group, PLLC, Oklahoma City, Oklahoma for Petitioners Oklahoma Call for Reproductive Justice, Tulsa Women's Reproductive Clinic, LLC, Alan Braid, M.D., Comprehensive Health of Planned Parenthood Great Plains, Inc. and Planned Parenthood of Arkansas & Eastern Oklahoma.
Catherine (Cici) Coquillette, Meetra Mehdizadeh, and Rabia Muqaddam, Center for Reproductive Rights, New York, New York for Petitioners Oklahoma Call for Reproductive Justice, Tulsa Women's Reproductive Clinic, LLC, and Alan Braid, M.D.
Sarah Mac Dougall and Jennifer Sandman, Planned Parenthood Federation of America, New York, New York for Petitioners Comprehensive Health of Planned Parenthood Great Plains, Inc. and Planned Parenthood of Arkansas & Eastern Oklahoma.
Zach West, Acting Solicitor General, and Audrey A. Weaver, Assistant Solicitor General, Office of Attorney General, Oklahoma City, Oklahoma for Attorney General of Oklahoma, Gentner Drummond, pursuant to (A)(3).
Mike Shouse, Tulsa County District Attorney's Office, Tulsa, Oklahoma for Respondent Don Newberry, in his official capacity as Tulsa County Court Clerk.
Charles L. Sifers, Assistant District Attorney, Sixth Prosecutorial District, Chickasha, Oklahoma for Respondents Lisa Hannah, Melody Harper, Patti Barger, and Kimberly Berry in their respective roles as Court Clerks of Grady, Stephens, Caddo, and Jefferson Counties.
S. Corey Stone, Assistant District Attorney, Office of the District Attorney, District 23, Shawnee, Oklahoma for Respondent Valerie Ueltzen, in her official capacity as Court Clerk of Pottawotomie County.
Melissa G. Handke, First Assistant District Attorney, Twentieth Judicial District, Carter County District Attorney's Office, Ardmore, Oklahoma for Respondents Renee Bryant, Casandra Slover, Wendy Holland, Wanda Pierce, and Jodi Jennings in their respective roles as Court Clerks of Carter, Johnston, Love, Marshall, and Murray County.
Candice M. Irby, Assistant District Attorney, Wewoka, Oklahoma for Respondent Kimberly Davis in her official capacity as Seminole County Court Clerk.
Nicholas E. Thurman, Assistant District Attorney, Ada, Oklahoma for Respondent, the State of Oklahoma.
Matthew J. Primm, Assistant District Attorney, District 12, Pryor, Oklahoma for Respondent Jennifer Clinton in her official capacity as court clerk of Mayes County.
Angela Marsee, Assistant District Attorney, District 2, Arapaho, Oklahoma for Respondents Donna Howell, Staci Hunter, Sally Wayland, Jan Bailey, and Lynda Vermillion in their respective official capacities as court clerks of Beckham, Custer, Ellis, Roger Mills, and Washita County.
Kyle Cabelka, District Attorney, Lawton, Oklahoma for Respondents Robert Morales and Terry Kelley in their respective official capacities as court clerks of Comanche and Cotton County.
Tommy Humphries, Office of the District Attorney, El Reno, Oklahoma for Respondents Marie Hirst, Janelle Sharp, Christi Matli, Lisa Markus, and Deana Kilian in their respective official capacities as court clerks of Canadian, Garfield, Blaine, Kingfisher, and Grant County.
Brian T. Hermanson, Office of the District Attorney, Newkirk, Oklahoma for Respondents Marilee Thornton and Hillary Vorndran in their respective official capacities as court clerks of Kay and Noble County.
David R. Thomas, District Attorney, Altus, Oklahoma for Respondents Tina Swailes, Jeana Scott, Kay Richards, Stacy Macias, and Kevin Stephens in their respective official capacities as court clerks of Jackson, Greer, Kiowa, Harmon, and Tillman County.
Charles B. "Chuck" Sullivan, District Attorney, District 18, McAlester, Oklahoma for Respondents Pamela Smith and Tina Oaks in their respective official capacities as court clerks of Pittsburg and Haskell County.
Todd M. Wagner, Assistant District Attorney, Claremore, Oklahoma for Respondents Cathy Edwards and Deborah Mason in their official respective capacities as court clerks of Rogers and Craig County.
James E. Tillison, Assistant District Attorney, Holdenville, Oklahoma for Respondent Ashley Sanford in her official capacity as Hughes County Court Clerk.
PER CURIAM:
¶1 Petitioners filed this original proceeding objecting to two pieces of legislation passed by the Oklahoma legislature during the 2022 legislative session: S.B. 1503 and H.B. 4327. Both acts prohibit abortion after certain cutoff points while providing for a civil enforcement mechanism; both acts prohibit enforcement by the State, its subdivisions, and its agents--instead, the bills create a cause-of-action maintainable by any person for performing, or aiding and abetting the performance of, an abortion in violation of the acts. Petitioners challenge the bills on many grounds, but we do not address them all today. First and foremost, Petitioners' challenged the constitutionality of the acts prohibiting abortion in violation of the Oklahoma Constitution.
¶2 S.B. 1503 prohibits abortions after detection of a fetal heartbeat except in case of medical emergency. S.B. 1503 states in relevant part: "Sections 3 and 4 of this act shall not apply if a physician believes a medical emergency exists that prevents compliance of this act." S.B. 1503, § 5(A). There is no definition of medical emergency. There is also no severability clause.
¶3 H.B. 4327 on the other hand is a total ban on all abortions unless the "abortion is necessary to save the life of a pregnant woman in a medical emergency" or the "pregnancy is the result of rape, sexual assault, or incest that has been reported to law enforcement." H.B. 4327, § 2. H.B. 4327 states that "'Medical emergency' means a condition in which an abortion is necessary to preserve the life of a pregnant woman whose life is endangered by a physical disorder, physical illness, or physical injury, including a life-endangering physical condition caused by or arising from the pregnancy itself." H.B. 4327, § 1(3).
¶4 Pursuant to this Court's decision in Oklahoma Call for Reproductive Justice v. Drummond, , ¶ 9, -- P.3d --, finding an "inherent right of a pregnant woman to terminate a pregnancy when necessary to preserve her life," we find these two statutes to also be unconstitutional. S.B.1503 provides even more extreme language then Section 1-731.4, found unconstitutional in Oklahoma Call for Reproductive Justice v. Drummond, as such, under stare decisis this Court must also find S.B. 1503 unconstitutional. See , ¶ 12.
¶5 H.B. 4327 uses identical language as the statute in question in Oklahoma Call for Reproductive Justice v. Drummond, as such, pursuant to stare decisis this Court must also find it unconstitutional. See , ¶ 12. But unlike the statutes in question in Oklahoma Call for Reproductive Justice v. Drummond, H.B. 4327 contains a lengthy severability clause.
¶6 This Court has previously explained how analysis of severability issues should be performed:
Severability analysis is a necessary process when some, but not all, provisions of an enactment are to be condemned as unconstitutional and hence void. Its purpose is to determine whether non-offending statutory provisions may survive as valid after the clauses rejected as invalid are separated from the whole. The severability of a statutory enactment is not contingent on the presence of an express severability clause within the particular enactment's text. Survival of untainted statutory provisions that remain is appropriate when the valid and voided (as unconstitutional) provisions are not so "inseparably connected with and so dependent upon" each other that the surviving provisions would not have otherwise been enacted. Consideration must be given to whether the surviving provisions must rely on the severed portion for meaning or enforcement.
Fent v. Contingency Review Brd., , ¶ 18, , 523--24 (footnotes omitted). In this case, if the Court were to sever the language allowing for medical abortions only in case of a medical emergency in H.B. 4327, the Court would create an even more restrictive statute like S.B. 1503, which was in further violation of the Oklahoma Constitution. If the Court were to sever the prohibition on abortion altogether, there would be no meaning to the rest of the bill because there would be nothing to civilly enforce. In order to attempt to salvage the rest of H.B. 4327, this Court would have to re-write the entire statute, which is not our purview.
¶7 Because we hold both bills are unconstitutional under the Oklahoma Constitution, pursuant to this Court's analysis in Oklahoma Call for Reproductive Justice v. Drummond, , we need not reach the rest of the Petitioner's challenges to the legislation. We grant Petitioner declaratory relief as to both S.B. 1503 and H.B. 4327. See Fent v. Contingency Review Brd., , ¶¶ 10--11, 163 P.3d at 520--21; see also Okla. Call for Reproductive Justice v. Drummond, , ¶ 16. Having found both S.B. 1503 and H.B. 4327 are unconstitutional and therefore unenforceable, it is unnecessary to address the Petitioners' request for injunctive relief and/or writ of prohibition or Respondents' claims that Petitioners do not have a justiciable claim against them. Petitioners' request for injunctive relief and/or a writ of prohibition is denied. See Hunsucker v. Fallin, , ¶37, , 612.
ORIGINAL JURISDICTION ASSUMED; DECLARATORY RELIEF
GRANTED; INJUNCTIVE RELIEF AND WRIT OF PROHIBITION DENIED.
KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH and DARBY (by separate writing), JJ., CONCUR;
DARBY, J., concurring specially:
"If the Court was starting on square one on this subject, I would dissent. But this issue is determined by stare decisis. I maintain my position that I expressed in my dissent in Oklahoma Call for Reproductive Justice v. Drummond, , ___ P.3d ___." 
KANE, C.J. (by separate writing), ROWE, V.C.J. (by separate writing) and KUEHN, J. (by separate writing), DISSENT.

KANE, C.J., with whom Kuehn, J. joins, DISSENTING:
¶1 Were I to conclude that this case is exclusively resolved by the doctrine of stare decisis, I would dissent for the reasons given in my dissent in Oklahoma Call for Reproductive Justice v. Drummond, , __ P.3d __ ("OCRJ 1"). However, while this case and OCRJ 1 both deal with abortion, they present different legal and factual issues. I do not believe that application of OCRJ 1 fully resolves the current dispute.
¶2 Merely applying stare decisis in this case could be interpreted as amplifying and expanding the reach of OCRJ 1, which I continue to assert was wrongly decided. I dissent.

ROWE, V.C.J., dissenting:
¶1 I dissent to the Court's finding that S.B. 1503 is unconstitutional in light of our holding in Oklahoma Call for Reproductive Justice v. Drummond, , ("OCRJ I"). Specifically, there is an important difference between the language employed in S.B. 1503 and that used in , which we found unconstitutional in OCRJ I.
¶2 In OCRJ I, we held that under the Oklahoma Constitution,
[A] woman has an inherent right to choose to terminate her pregnancy if at any point in the pregnancy, the woman's physician has determined to reasonable degree of medical certainty or probability that the continuation of the pregnancy will endanger the woman's life due to the pregnancy itself or due to a medical condition that the woman is either currently suffering from or likely to suffer from during the pregnancy."
OCRJ I, , ¶ 9.
¶3 The petitioners in OCRJ I were challenging the constitutionality of two statutes, including § 1-731.4. Section 1-731.4 criminalized the performance of an abortion except when done "to save the life of a pregnant woman in a medical emergency." The statute defined "medical emergency" as a "condition which cannot be remedied by delivery of the child in which an abortion is necessary to preserve the life of a pregnant woman whose life is endangered by a physical disorder, physical illness or physical injury including a life-endangering physical condition caused by or arising from the pregnancy itself." 63 O.S.Supp.2022 § 1-731(A)(2). We held that the narrow scope of this exception infringed on a woman's right to terminate her pregnancy to preserve her life:
We read this section of law to require a woman to be in actual and present danger in order for her to obtain a medically necessary abortion. We know of no other law that requires one to wait until there is an actual medical emergency in order to receive treatment when the harmful condition is known or probable to occur in the future. Requiring one to wait until there is a medical emergency would further endanger the life of the pregnant woman and does not serve a compelling state interest. 
OCRJ I, , ¶ 12.
¶4 Section 1-731.4 did not allow for a physician to determine whether a medical emergency existed. Rather, physicians were bound by the statutory definition of a medical emergency. Unlike § 1-731.4, S.B. 1503 does not explicitly define the term "medical emergency," instead placing the decision of what constitutes a medical emergency within the sole discretion of the treating physician. S.B. 1503 states: "Sections 3 and 4 of this act shall not apply if a physician believes a medical emergency exists that prevents compliance with this act." Had this qualifying language, granting physicians sole discretion to determine what constitutes a medical emergency, been included in § 1-731.4, it likely would have alleviated the majority's concern with the constitutionality of that statute.
¶5 Here, we have: (1) a ban on elective abortion, which the majority upheld in OCRJ I; and (2) an exception that the majority endorsed in OCRJ I--that a woman may terminate her pregnancy if her physician determines there is a medical emergency. In combination, these provisions completely comport with our currently settled precedent. Accordingly, stare decisis leads to a finding of constitutionality--not unconstitutionality--as the majority finds.
¶6 I cannot ascribe to the majority's finding that S.B. 1503 imposes on a woman's constitutional right to terminate her pregnancy in order to preserve her life. Moreover, in finding that S.B. 1503 violates that right, I am concerned that the majority has expanded that right beyond what the Court recognized in OCRJ I.
¶7 I am also troubled by the majority's finding that S.B. 1503 has "even more extreme language than Section 1-731.4." In OCRJ I, we did not find that § 1-731.4 contained "extreme language." Thus, the majority's characterization of S.B. 1503 as "even more extreme" seems misplaced. Additionally, if by "more extreme" the majority means more restrictive on abortion, I find the majority's assessment difficult to reconcile, given that S.B. 1503 gives physicians the discretion to determine if a medical emergency exists, whereas in § 1-731.4 the existence of a medical emergency was dictated by statute. Furthermore, as this Court has previously upheld legislative bans on elective abortions, I find the majority's labeling of this legislation as "extreme" to be unsettling.
¶8 Finally, with respect to H.B. 4327, I dissent to the majority's finding that the act is unconstitutional for the same reasons set out in my dissent in OCRJ I. The issues presented in this matter are political questions, which are better resolved by the people via our democratic process.
FOOTNOTES
 Oklahoma Call for Reproductive Justice v. Drummond, , ¶ 1 (Kauger, J. concurring) ("I fully concur in the majority opinion which finds [banning abortion except when necessary to preserve the life of the mother] constitutional.").
 Notably, the right to an abortion that we crafted in OCRJ I was predicated on a physician's determination that "the pregnancy will endanger the woman's life." See id. ¶ 9.

KUEHN, J., DISSENTING:
¶1 I dissent for the reasons given in my dissent in Oklahoma Call for Reproductive Justice v. Drummond, , __ P.3d __.