OSCN Found Document:Question Submitted by: The Honorable Warren Hamilton, Oklahoma State Senate, District 7, et al.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Warren Hamilton, Oklahoma State Senate, District 7, et al.
2023 OK AG 12
Decided: 11/21/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 12, __ __

 

Question Submitted By: The Honorable Warren Hamilton, Oklahoma State Senate, District 7, The Honorable Shane Jett, Oklahoma Senate, District 17, The Honorable Nathan Dahm, Oklahoma Senate, District 33, The Honorable George Burns, Oklahoma Senate, District 5, The Honorable Tom Gann, Oklahoma House of Representatives, District 8, The Honorable David Smith, Oklahoma House of Representatives, District 18
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Does Oklahoma law, through section 1-733 of title 63 of the Oklahoma Statutes or some other provision, make it a punishable crime for a pregnant woman to solicit, perform, or self-induce an abortion to terminate her pregnancy intentionally? 
I.
SUMMARY
¶1 The answer to your question is no. Oklahoma law does not allow the punishment of pregnant women attempting an abortion, self-induced or otherwise. The Legislature has repeatedly made this clear in statutory text, and just last year, repealed the one law that would have expressly allowed such a prosecution. Nor is there any historical tradition of such punishment in Oklahoma or nationwide prior to the Roe v. Wade era. This in no way indicates that abortion is lawful, as longstanding Oklahoma law prohibits the performance of--or the aiding and abetting of--every abortion throughout pregnancy except as necessary to save a pregnant woman's life.[1]

II.
BACKGROUND
A. In the decades prior to Roe v. Wade, Oklahoma prosecuted practitioners of abortion to protect pregnant women, unborn children, and society.
¶2 In Oklahoma, attempting or performing an abortion has been a crime at every stage of pregnancy, tracing all the way back to Oklahoma Territory law from 1890. See Okla. (Terr.) Stat. § 2187 (1890), recodified at Okla. (Terr.) Stat. § 2177 (1893), recodified at Okla. (Terr.) Stat. § 2268 (1903), recodified at Okla. Comp. Laws § 2370 (1909), recodified at Okla. Rev. Laws § 2436 (1910), recodified at Okla. Comp. Stat. Ann. § 1859 (1921), recodified at O.S. § 1834 (1931), recodified at 21 O.S.1941, § 861. In its current form, this law ("section 861") states that:
Every person who administers to any woman, or who prescribes for any woman, or advises or procures any woman to take any medicine, drug or substance, or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage[2] of such woman, unless the same is necessary to preserve her life shall be guilty of a felony punishable by imprisonment in the State Penitentiary for not less than two (2) years nor more than five (5) years.

21 O.S.2021, § 861; see also Oklahoma Call for Reprod. Just. ["OCRJ"] v. Drummond, 2023 OK 24, ¶ 7, 526 P.3d 1123, 1129 ("This law has changed very little since the days of the Oklahoma Territory.").
¶3 Thus, nearly two decades before and for over five decades after the adoption of the state constitution, until Roe v. Wade, 410 U.S. 113 (1973), abortion was criminalized throughout pregnancy in Oklahoma, except to save the pregnant woman's life.
¶4 Prior to Roe, moreover, Oklahoma prosecutors charged, and juries convicted, various persons for violating section 861 or other statutes in connection with the performance of abortion. See, e.g., Wilson v. State, 1927 OK CR 42, 252 P. 1106; Davis v. State, 1925 OK CR 61, 234 P. 787; Thacker v. State, 1933 OK CR 119, 26 P.2d 770; and Smith v. State, 1946 OK CR 115, 175 P.2d 348. During this time, a separate, companion statute--title 21, section 862, in its most recent iteration--was on the books, and that statute allowed for the prosecution of a pregnant woman who sought an abortion:
Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever, with intent thereby to procure a miscarriage, unless the same is necessary to preserve her life, is punishable by imprisonment in the county jail not exceeding one (1) year, or by fine not exceeding One Thousand Dollars ($1,000.00), or by both.
21 O.S.2021, § 862.[3]

¶5 Whereas a conviction under section 861 resulted in a felony punishable by at least two years in prison, a conviction under section 862 would have been a misdemeanor as it only allowed a maximum punishment of one year in county jail. See 21 O.S.2021, §§ 5--6, 10; Carr v. State, 1961 OK CR 15, ¶¶ 4--9, 359 P.2d 606, 608--09. But even that one-year punishment for section 862 was just theoretical, as this office has been unable to identify any reported prosecutions or convictions of pregnant women under section 862. The absence of any readily available prosecution history contrasts starkly with section 861's known track record and indicates that the prosecution of pregnant women in connection with abortion attempts--even for a misdemeanor--is not entrenched in historical Oklahoma practice. This position dovetails with the repeated emphasis of the Court of Criminal Appeals ("OCCA") in pre-Roe cases that, although a "female in an abortion case may be prosecuted" under what would become section 862, the pregnant woman was not generally seen to be criminally culpable for the abortion. Wilson, 1927 OK CR 42, 252 P. at 1107--08; see also Cahill v. State, 1947 OK CR 27, 178 P.2d 657, 659--60 (re-affirming Wilson and holding that the pregnant woman "is regarded as the victim of the crime, rather than a participant in it" (citations omitted)); Reeves v. Territory, 1909 OK CR 65, 101 P. 1039, 1042 (favorably embracing scholarly position that "the woman is not an accomplice in . . . abortion" (citation omitted)).
¶6 In short, historically in Oklahoma, prosecution of a pregnant woman for a misdemeanor was theoretically permitted but not carried out in any substantial manner, if at all.
¶7 This was not unique to Oklahoma. Nationwide, the pre-Roe practice was consistent: regardless of whether state laws on abortion technically applied to pregnant women in some way, the States rarely, if ever, prosecuted them for abortion alone, much less obtained a conviction. This has been confirmed by many. In a lengthy book on abortion history--a scholarly work the United States Supreme Court cited six different times in overturning Roe in 2022--one historian defended the "long and fact-based tradition of [treating] abortion as a crime against women." JOSEPH W. DELLAPENNA, DISPELLING THE MYTHS OF ABORTION HISTORY 302 (Carolina Academic Press 2006). "Apparently," he observed, "no woman has ever been convicted in the United States of the crime of abortion as such, and only a few have been charged." Id. at 301; see also Clarke Forsythe, Why the States Did Not Prosecute Women for Abortion Before Roe v. Wade, AMERICANS UNITED FOR LIFE (April 23, 2010) ("[T]he almost uniform state policy before Roe was that abortion laws targeted abortionists, not women.").
[4]
B. In the Roe v. Wade and Planned Parenthood v. Casey era, Oklahoma enacted numerous laws to protect unborn children and women from abortion.
¶8 The United States Supreme Court held in Roe that the abortion prohibitions in virtually all fifty States--including Oklahoma's section 861--were unconstitutional under a "new constitutional right" to abortion. Roe, 410 U.S. at 221--22 (White, J., dissenting). Citing Roe, the OCCA and United States District Court for the Northern District of Oklahoma then held that Oklahoma statutes prohibiting abortion violated the United States Constitution. See Jobe v. State, 1973 OK CR 51, ¶ 4, 509 P.2d 481, 482; Henrie v. Derryberry, 358 F. Supp. 719, 727 (N.D. Okla. 1973). Nearly twenty years later, the Supreme Court upheld Roe in Planned Parenthood v. Casey, insisting that states could not place an "undue burden" on women seeking an abortion before viability. 505 U.S. 833, 876--79 (1992).
¶9 During the Roe and Casey era, Oklahoma never repealed section 861, even though the Legislature knew how to do so. See, e.g., 1973 Okla. Sess. Laws ch. 99, § 1 (H.B. 1142) (repealing, in the immediate aftermath of Roe, a statutory provision classifying the "procuring, aiding or abetting" of an abortion as unprofessional conduct for a physician).[5] Rather, the Legislature left section 861 on the books while it continually enacted laws to maximize protections for the unborn and for pregnant women. See, e.g., 63 O.S.Supp.2010 and Supp.2017, § 1-737.4 (requiring abortion clinics to post signs informing pregnant women that they cannot be forced to have an abortion without "freely given and voluntary consent" and that "[t]here are public and private agencies willing and able to help you carry your child to term, have a healthy pregnancy and a healthy baby and assist you and your child after your child is born").
¶10 Central here, five years after Roe, the Oklahoma Legislature enacted a law holding that:
No woman shall perform or induce an abortion upon herself except under the supervision of a duly licensed physician. Any physician who supervises a woman in performing or inducing an abortion upon herself shall fulfill all the requirements of this article which apply to any physician performing or inducing an abortion.
63 O.S.Supp.1978, § 1-733. This law was silent about punishment, and nothing has changed on that front in the forty-five years since it was first enacted. See 63 O.S.2021, § 1-733. And, unsurprisingly, this office is not aware of any enforcement action or attempted prosecution brought against a pregnant woman under this law since it took effect.
¶11 Moreover, while the Legislature increased protections for the unborn during the Roe era, it repeatedly indicated that pregnant women should not be prosecuted solely for seeking or obtaining an abortion. Your request cites two such statutes: sections 652 and 691 of title 21, although there are plenty more.[6]

¶12 Since 2005, section 652 has indicated that certain prohibitions on attempted killing with a firearm, vehicular endangerment, and assault and battery are applicable when an unborn child is the victim. Section 691 indicates that the definition of homicide encompasses the unborn child, as well, as of 2006. Both statutes contain an identical and important proviso, however: "Under no circumstances shall the mother of the unborn child be prosecuted for causing the death of the unborn child unless the mother has committed a crime that caused the death of the unborn child." 21 O.S.2021, § 652(E); 21 O.S.2021, § 691(D). A similar proviso can also be found in Oklahoma's wrongful death statute, which since 2005 allows recovery "for the death of an unborn person" when a physician fails in certain ways (e.g., by failing to obtain "voluntary and informed consent" from a pregnant woman before an abortion). 12 O.S.2021, § 1053(F). In sum, the Legislature has repeatedly indicated that pregnant women should not be prosecuted solely for seeking or obtaining an abortion.
C. The Supreme Court overturned Roe v. Wade, the Legislature repealed section 862, and the Legislature again insisted that pregnant women should not be prosecuted. 
¶13 In April 2022, the Legislature amended its "trigger" law to ensure the immediate repeal of four statutes upon the Attorney General's certification that the Supreme Court overruled Roe and Casey. This included title 21, section 862. See 2022 Okla. Sess. Laws ch. 133 (S.B. 1555) (amending 2021 Okla. Sess. Laws ch. 308 (S.B. 918)).
[7]
¶14 At the same time, the Legislature signaled that it wanted section 861 or a similar law punishing abortionists enforced after Roe was gone. 2022 Okla. Sess. Laws ch. 133, § 1. Almost simultaneously with the updated trigger law, the Legislature passed another abortion ban that, like section 861, applied throughout pregnancy. See 63 O.S.Supp.2022, § 1-731.4. Given its incompatibility with Roe, this criminal prohibition could only have been passed in the anticipation that Roe would be overturned. And, as noted above, this law expressly stated that it does not "authorize the charging or conviction of a woman with any criminal offense in the death of her own unborn child . . . ." Id. § 1-731.4(B)(3)(a). Thus, in multiple ways, the Legislature made clear that it wanted abortion prohibited throughout pregnancy even after Roe was overruled, but it did not intend for pregnant women to be prosecuted.
¶15 The Legislature correctly anticipated Roe being overturned. On June 24, 2022, the United States Supreme Court overruled Roe and Casey, declaring that Roe was "egregiously wrong from the start," its "reasoning was exceptionally weak," and it "has had damaging consequences." Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228, 2243 (2022). The Court repeatedly emphasized that its decision returned the issue of abortion "to the people and their elected representatives." Id. at 2259, 2279, 2284.
¶16 The same day Roe and Casey were overruled, the prior administration of this office completed the certification required under the trigger law. The certification letter stated that "[a]s a result of Dobbs, the authority of the State of Oklahoma to prohibit abortion has been confirmed, and the State of Oklahoma may enforce Section 861 of Title 21 of the Oklahoma Statutes or enact a similar statute prohibiting abortion throughout pregnancy." The letter further declared that the amended trigger law "shall hereby take effect and be in full force," repealing section 862. Letter from John O'Connor, Okla. Att'y Gen., to J. Kevin Stitt, Okla. Governor (June 24, 2022).
[8]
¶17 This past March, in OCRJ v. Drummond, the Oklahoma Supreme Court declined to find that section 861 violates the Oklahoma Constitution, "as it allows the termination of a pregnancy in order to preserve the life of the pregnant woman." OCRJ, 2023 OK 24, ¶ 13, 526 P.3d at 1131. "Nor do we find the language in § 861 itself is unconstitutionally vague," the Court held. Id. The Supreme Court has declared other abortion prohibitions unconstitutional recently, including title 63, section § 1-731.4 (Supp.2022), but only on the ground that the "medical emergency" exception was not protective enough of pregnant women. See id.; see also OCRJ v. State, 2023 OK 60, 531 P.3d 117.
III.
DISCUSSION
¶18 The Background alone resolves your question as to whether Oklahoma law currently makes it a crime for a woman to seek or obtain an abortion. That is because "[t]he goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature." Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219. And it is simply impossible to look at the Legislature's repeated insistence in various statutory enactments that pregnant women are off-limits from prosecution and civil liability when it comes to abortion, as well as its definitive repeal of section 862, and conclude that the Legislature nevertheless somehow intended for pregnant women who seek or obtain abortions to be brought up on misdemeanor or even homicide charges. The Legislature could hardly have been clearer on this topic.
¶19 Nevertheless, you asked this office to review section 1-733 of title 63, which states that "[n]o woman shall perform or induce an abortion upon herself, except under the supervision of a duly licensed physician." But that statute does not designate such self-performance or inducement a crime, nor does it mention any punishment whatsoever. "The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses. If a statute is plain and unambiguous, it will not be subjected to judicial construction, but will receive the effect its language dictates." Yocum, 2005 OK 27, ¶ 9, 130 P.3d at 219. Here, the statute does not include any indication that the action should be considered criminal.
¶20 Section 21 of title 21 does not change the analysis. To be sure, that statute does say that "[w]here the performance of an act is prohibited by any statute, and no penalty for the violation of such statute is imposed in any statute, the doing of such act is a misdemeanor." 21 O.S.2021, § 21. But Oklahoma courts have never interpreted this language as imposing an absolute rule to be applied regardless of context.
¶21 The OCCA held as early as 1953, for example, that section 21 did not apply to a statute making it "unlawful for any person to serve . . . as superintendent, principal, supervisor, librarian, school nurse, classroom teacher or other instructional, supervisory or administrative employee of a school district unless such person holds a valid certificate of qualification . . . ." State v. Stegall, 1953 OK CR 13, 253 P.2d 183, 185 (citation omitted). For starters, the court held a determination that a violation of this statute was a criminal misdemeanor "would be in face of the absence of words so saying." Id. Moreover, to find that this provision constituted a criminal misdemeanor required ignoring the various other provisions of the school code expressly labeling certain activities to be misdemeanors. Id. The Legislature's decision, therefore, to make the violation of the particular provision merely "unlawful" but not a criminal misdemeanor "was not a mere oversight, but on the contrary creates a presumption that it was intentional." Id. Put differently, "if it had been the intent of the Legislature to make the violation of a specific section criminal as well as unlawful it would have been an easy matter to have so said . . . ." Id. In the end, the OCCA held, section 21 did not apply, in part because "nothing in the section indicates a legislative intent to make a violation of the section criminal." Id., 253 P.2d at 188.
¶22 Utilizing a similar context-infused analysis, the OCCA held that section 21 did apply to a particular gun-related statute in Whirlpool Corp. v. Henry, 2005 OK CR 7, ¶¶ 7--9, 110 P.3d 83, 85--86. There, the statutes in question stated that "[n]o person, property owner, tenant, employer, or business entity shall be permitted to establish any policy or rule that has the effect of prohibiting any person, except a convicted felon, from transporting and storing firearms in a locked vehicle on any property set aside for any vehicle." Id. ¶ 2, 110 P.3d at 84 (quoting 21 O.S.Supp.2004, §§ 1289.7a, 1290.22(B)). Contextual factors that the OCCA deemed relevant "indicators of legislative intent" included the Legislature's placement of the provision in the Penal Code (title 21). Id. ¶¶ 7--9, 110 P.3d at 85--86. This "suggest[ed] that violations of those Acts are intended to be criminal in nature." Id. ¶ 8, 110 P.3d at 86. The OCCA also looked to this office, noting that the Attorney General had twice analyzed the question. Id. ¶ 9, 110 P.3d at 86. In the end, the context indicated that "these statutes are criminal rather than civil." Id.
¶23 The analytical approach in Stegall and Whirlpool counsels toward a finding that section 21 does not apply here because section 1-733's instruction to pregnant women is not a criminal provision. Unlike the statute in Whirlpool, section 1-733 is not found in the Penal Code, but rather in the Oklahoma Public Health Code. See 63 O.S.2021, § 1-101. And it is this office's view, based on copious legislative text, that the Legislature did not intend for section 1-733 to greenlight the prosecution of pregnant women for abortion. Moreover, like Stegall, the surrounding context of section 1-733 indicates that the Legislature knows exactly how to put a criminal punishment provision into a statute. It declined to do so with section 1-733. Indeed, the immediately preceding statute--enacted as part of the same abortion bill in 1978--mandated that "[a]ny person violating subsection A of this section shall be guilty of homicide." 63 O.S.Supp.1978, § 1-732(F); see also id. § 1-731(A) ("Any person violating this section shall be guilty of a felony . . . ."). The absence of this or similar language in section 1-733 cannot have been accidental.
¶24 At most, section 21 creates an ambiguity out of otherwise straightforward text as to whether section 1-733 constitutes a criminal misdemeanor. And a finding of ambiguity simply means that we must employ the basic rules of statutory construction to determine the Legislature's intent. McIntosh v. Watkins, 2019 OK 6, ¶ 4, 441 P.3d 1094, 1096. And, like the principles in Stegall and Whirlpool, those rules counsel toward finding that section 1-733 does not impose criminal penalties of any sort on pregnant women.
¶25 Again, when a statute is ambiguous, legislative intent is ascertained from the statutory context. Hogg v. Oklahoma Cnty. Juv. Bureau, 2012 OK 107, ¶ 7, 292 P.3d 29, 33. This includes reading the "whole act in light of its general purpose and objective[,]" analyzing "relevant provisions together," and resolving "[a]ny doubt" by looking to "other statutes relating to the same subject matter." McIntosh, 2019 OK 6, ¶ 4, 441 P.3d at 1096. As previously stated, surrounding provisions of the Act indicate that the Legislature knew how to criminalize abortion-related actions, and it chose not to do so with section 1-733. And, as detailed in depth above, a review of other statutes relating to abortion throughout Oklahoma law reveals an overwhelming legislative intent to avoid prosecuting pregnant women, civilly or criminally.
¶26 This latter point implicates several other rules of statutory interpretation. First, specific statutes control over general statutes. Ghoussoub v. Yammine, 2022 OK 64, ¶ 25, 518 P.3d 110, 116. Here, section 21 of title 21 is a general statute that has nothing to do with abortion, whereas section 1-733 and all the other statutes listed above preventing the prosecution of women are statutes specifically about abortion, and therefore, they control on this topic. Second, "more recently-enacted legislation controls over earlier provisions." Ghoussoub, 2022 OK 64, ¶ 25, 518 P.3d at 116 (citation omitted). All the provisions listed above prohibiting the prosecution of pregnant women--as well as the repeal of section 862--come after section 1-733 was enacted in 1978 and long after section 21 was enacted. Therefore, the more recent enactments indicating that such women are not to be prosecuted control. Third, statutes must be interpreted to "avoid absurd consequences." McIntosh, 2019 OK 6, ¶ 4, 441 P.3d at 1096. It would truly be an absurdity, in light of the lengthy list of legislative admonitions protecting pregnant women from prosecution, to find that a statute that does not contain any punitive language nevertheless somehow allows for pregnant women to be prosecuted and punished. This absurdity is heightened even further by the Legislature's decision to repeal section 862, which expressly allowed for misdemeanor criminal charges to be brought against pregnant women. Finding that section 1-733 nevertheless implicitly allows for the prosecution of women on misdemeanor charges would render this repeal virtually meaningless.
¶27 Additional contextual points counsel toward this same conclusion.
¶28 First, this office finds noteworthy the apparent lack of any record, historically, of prosecuting pregnant women in Oklahoma, under section 862, section 1-733, or any other provision. Similarly noteworthy is the lack of such a record nationwide. Indeed, for decades many prominent leaders in this country's pro-life movement have expressly argued that States should not prosecute pregnant women relating to abortion. See, e.g., Symposium, One Untrue Thing, NATIONAL REVIEW (Aug. 1, 2007).
[9] The president of the Susan B. Anthony List, for example, argued that this non-prosecution position is "a uniquely American case of handling a delicate and tragic situation with sensitivity." Id. Still two others labeled the assertion that women must be prosecuted alongside the abortionist as "ludicrous." Id.
¶29 One point in particular is worth raising:
[I]n nearly all of the reported court cases explicitly addressing the issue of whether a woman was an accomplice to her abortion, it was the abortionist (not the prosecutor) who pushed the courts to treat the woman as an accomplice, for the obvious purpose of undermining the state's criminal case against the abortionist . . . . 

Id. (emphases in original) (quoting president of Americans United for Life). That prosecuted physicians have been the most eager to criminalize pregnant women is consistent with Oklahoma's historical experience, as well, and it counsels against finding that the Legislature itself took this position. Put differently, States are not hypocritical under this approach. Persons accusing States of logical incoherency for condemning abortion but declining to prosecute pregnant women "seem wholly ignorant of the long history underlying this rule" and "wholly unaware of the need for corroborating testimony" in prosecuting practitioners of abortion. DELLAPENNA, supra, at 302. "[T]he tradition of not treating the women undergoing an abortion (whether self-induced or otherwise) as a criminal," he added, "does not contradict the desire to protect the life of the fetus." Id.; cf. Wilson, 1927 OK CR 42, 252 P. at 1108 ("in cases of this kind the public welfare demands the strict application of the general rule as to who are accomplices" (citation omitted)).
¶30 Given this backdrop, it again seems highly implausible that the correct interpretation of section 1-733, and the Legislature's intent, is one that exposes pregnant women to future prosecutions. At minimum, the Legislature would need to be much clearer on this point. But the Legislature's straightforward instructions on this topic point the other way.
¶31 Finally, the OCCA has repeatedly emphasized that it is "committed to the rule of strict construction in the application of criminal statutes." State v. Davis, 2011 OK CR 22, ¶ 5, 260 P.3d 194, 195 (citation omitted). Essentially, this means that a "statute will not be enlarged by implication or intendment beyond that fair meaning of the language used, or what their terms reasonably justify, and will not be held to include offenses and persons other than those which are clearly described and provided for . . . ." Matthews v. Powers, 1967 OK CR 37, ¶ 10, 425 P.2d 479, 482 (citation omitted); see also Newlun v. State, 2015 OK CR 7, ¶ 9, 348 P.3d 209, 211--12 ("[W]ords not found in the text of a criminal statute will not be read into it for the purpose of extending it . . . ." (citation omitted)). "Further, rules of statutory construction require criminal statutes be construed strictly against the State and liberally in favor of the accused." State v. Tran, 2007 OK CR 39, ¶ 8, 172 P.3d 199, 200. The purpose of this "rule of lenity" is "to ensure that when liberty is at stake, all citizens have fair and clear warning of what conduct is prohibited, and, equally important, the severity of punishment for any infraction." Newlun, 2015 OK CR 7, ¶ 9, 348 P.3d at 211--12. Because this office is finding that section 1-733's instruction to pregnant women is not a criminal provision at all, the rule of lenity does not technically control here. But the principle underlying the rule is informative of how these types of issues should be handled. And here, applying that principle counsels firmly against criminally prosecuting women using section 1-733.
¶32 It is, therefore, the official Opinion of the Attorney General that:

Section 1-733 of title 63 does not permit the charging of a pregnant woman with a misdemeanor or felony for performing or inducing an abortion on herself to intentionally terminate her pregnancy, nor does any other Oklahoma statute. 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
ZACH WEST
DIRECTOR OF SPECIAL LITIGATION

FOOTNOTES
[1] This office has reviewed the Oklahoma Supreme Court's latest decision in Oklahoma Call for Reproductive Justice v. Drummond, 2023 OK 111, and has determined that the decision does not impact this office's analysis or conclusion in this opinion.
[2] Section 861's text says "miscarriage" instead of abortion, but the statute only prohibits intentional attempts, and courts have long recognized that it is directed at abortion. See, e.g., Herbert v. Oklahoma Christian Coal., 1999 OK 90, ¶ 7 n.2, 992 P.2d 322, 326 n.2 ("21 O.S. § 861 . . . made procuring an abortion punishable by imprisonment"); Jobe v. State, 1973 OK CR 51, ¶ 2, 509 P.2d 481, 481 (labeling section 861 the "Oklahoma Anti-Abortion Statute").
[3] As will be discussed momentarily, section 862 has recently been repealed.
[4] Available at https://aul.org/2010/04/23/why-the-states-did-not-prosecute-women-for-abortion-before-roe-v-wade/.
[5] A similar law was re-enacted by the Legislature in 2021. See 2021 Okla. Sess. Laws ch. 205 (H.B. 1102) (amending, inter alia, 59 O.S.2021, § 509(20)).
[6] Several of the following statutes have been enjoined or found unconstitutional, although never on the basis of the quoted provision exempting women from prosecution or liability:
Partial-birth abortion prohibition (H.B. 2542): "A woman upon whom a partial-birth abortion is performed may not be prosecuted under this section or for a conspiracy to violate this section." 21 O.S.Supp.1998, § 684(E).
Civil medication abortion prohibition (S.B. 1902): "No pregnant female who obtains or possesses RU-486 (mifepristone) for the purpose of inducing an abortion to terminate her own pregnancy shall be subject to any [civil] action brought under subsection F of this section." 63 O.S.Supp.2010, § 1-729a(H).
Sex-selection abortion prohibition (S.B. 1890): "No fine shall be assessed against the female upon whom an abortion is performed or attempted." 63 O.S.Supp.2010, § 1-731.2(C)(3).
Criminal abortion prohibition (S.B. 612): "This section does not . . . authorize the charging or conviction of a woman with any criminal offense in the death of her own unborn child . . . ." 63 O.S.Supp.2022, § 1-731.4(B)(3)(a).
Dismemberment abortion prohibition (H.B. 1721): "No woman upon whom an abortion is performed or attempted to be performed shall be thereby liable for performing or attempting to perform a dismemberment abortion." 63 O.S.Supp.2015, § 1-737.9(C).
Pain-capable abortion prohibition (H.B. 1888): "No penalty may be assessed against the woman upon whom the abortion is performed or induced or attempted to be performed or induced." 63 O.S.2011, § 1-745.7.
Civil abortion prohibition (S.B. 1503): "[A] civil action under this section shall not be brought . . . [a]gainst the woman upon whom an abortion was performed or induced or attempted to be performed or induced in violation of this act, or against a pregnant woman who intends or seeks to abort her unborn child in violation of this act . . . ." 63 O.S.Supp.2022, § 1-745.39(K)(1).
Civil abortion prohibition (H.B. 4327): "[A] civil action under this section may not be brought . . . [a]gainst the woman upon whom an abortion was performed or induced or attempted to be performed or induced in violation of this act, or against a pregnant woman who intends or seeks to abort her unborn child in violation of this act . . . ." 63 O.S.Supp.2022, § 1-745.55(K)(1).
Criminal medication abortion prohibition (S.B. 778): "No criminal penalty may be assessed against the pregnant woman upon whom the drug-induced abortion is attempted, induced or performed." 63 O.S.2021, § 1-731.2(C).
Civil medication abortion prohibition (S.B. 778): "No civil liability may be assessed against the pregnant woman upon whom the drug-induced abortion is attempted, induced or performed." 63 O.S.2021, § 1-756.11(B).
Medication abortion prohibition (S.B. 779): "No civil or criminal penalty may be assessed against the pregnant woman upon whom the drug-induced abortion is attempted, induced or performed." 63 O.S.2021, § 1-757.10(E).
[7] This repeal also included sections 684, 714, and 863 of title 21.
[8] A copy of this certification letter is available on the Attorney General's website under the Citizen Resources tab. See https://www.oag.ok.gov/sites/g/files/gmc766/f/certification_0.pdf.
[9] Available at https://www.nationalreview.com/2007/08/one-untrue-thing-nro-symposium/.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1909 OK CR 65, 101 P. 1039, 2 Okl.Cr. 351, 
Reeves v Territory
Discussed

 
1925 OK CR 61, 234 P. 787, 30 Okl.Cr. 61, 
Davis v State
Discussed

 
1927 OK CR 42, 252 P. 1106, 36 Okl.Cr. 148, 
Wilson v State
Discussed at Length

 
1933 OK CR 119, 26 P.2d 770, 55 Okl.Cr. 161, 
Thacker v State
Discussed

 
2005 OK CR 7, 110 P.3d 83, 
WHIRLPOOL CORP. v. HENRY
Discussed

 
2007 OK CR 39, 172 P.3d 199, 
STATE v. TRAN
Discussed

 
2011 OK CR 22, 260 P.3d 194, 
STATE v. DAVIS
Discussed

 
2015 OK CR 7, 348 P.3d 209, 
NEWLUN v. STATE
Discussed at Length

 
1961 OK CR 15, 359 P.2d 606, 
CARR v. STATE
Discussed

 
1967 OK CR 37, 425 P.2d 479, 
MATTHEWS v. POWERS
Discussed

 
1946 OK CR 115, 175 P.2d 348, 83 Okl.Cr. 209, 
Smith v State
Discussed

 
1947 OK CR 27, 178 P.2d 657, 84 Okl.Cr. 1, 
Cahill v State
Discussed

 
1973 OK CR 51, 509 P.2d 481, 
JOBE v. STATE
Discussed at Length

 
1953 OK CR 13, 253 P.2d 183, 96 Okl.Cr. 281, 
STATE v. STEGALL
Discussed

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2005 OK CIV APP 23, 110 P.3d 86, 
AMEEN v. PRUDENTIAL PROPERTY AND CASUALTY INSURANCE CO.
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1999 OK 90, 992 P.2d 322, 70 OBJ 3343, 
Herbert v. Oklahoma Christian Coalition, Inc.
Discussed

 
2005 OK 27, 130 P.3d 213, 
YOCUM v. GREENBRIAR NURSING HOME
Discussed at Length

 
2012 OK 107, 292 P.3d 29, 
HOGG v. OKLAHOMA COUNTY JUVENILE BUREAU
Discussed

 
2019 OK 6, 441 P.3d 1094, 
MCINTOSH v. WATKINS
Discussed at Length

 
2022 OK 64, 518 P.3d 110, 
GHOUSSOUB v. YAMMINE
Discussed at Length

 
2023 OK 24, 526 P.3d 1123, 
OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE v. DRUMMOND
Discussed at Length

 
2023 OK 60, 531 P.3d 117, 
OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE v. STATE OF OKLAHOMA
Discussed

 
2023 OK 111, 
OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE v. DRUMMOND
Cited

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 1053, 
Wrongful Death - Limitation of Actions - Damages - Death of an Unborn Person
Cited

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 684, 
Repealed
Cited

 
21 O.S. 1289.7a, 
Liability for Prohibiting Persons From Transporting, Storing Firearms or Ammunition in Locked Vehicle
Cited

 
21 O.S. 5, 
Definition of Felony
Cited

 
21 O.S. 21, 
Prohibited Act a Misdemeanor Unless Otherwise Stated
Cited

 
21 O.S. 652, 
Shooting with Intent to Kill - Assault and Battery with Deadly Weapon, etc.
Cited

 
21 O.S. 691, 
Definitions
Cited

 
21 O.S. 861, 
Procuring an Abortion
Discussed at Length

 
21 O.S. 862, 
Repealed
Cited

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 509, 
Unprofessional Conduct - Definition
Cited

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 1-729a, 
Legislative Findings - Regulation of Mifepristone RU-486 and Abortion-Inducing Drugs
Cited

 
63 O.S. 1-756, 
Mifepristone - Signage - Informed Consent - Penalties for Violations
Cited

 
63 O.S. 1-101, 
Short Title
Cited

 
63 O.S. 1-731, 
Persons Who May Perform Abortions - Violations - Penalties
Discussed at Length

 
63 O.S. 1-732, 
Viable Fetus - Grounds to Abort - Procedure
Cited

 
63 O.S. 1-733, 
Self-Induced Abortions
Discussed

 
63 O.S. 1-737, 
Hospitals Which May Perform Abortions
Cited